BILLY RAY PREVATTE *v.* DIRECTOR, PA-
TUXENT INSTITUTION

[No. 57, September Term, 1968.]

*Decided November 18, 1968.*

408

Before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

ORTH, J., delivered the opinion of the Court.

On 13 July 1956 the applicant was indicted for murder in Prince George's County. He filed pleas of not guilty, not guilty by reason of insanity at the time of the commission of the offense and not guilty by reason of insanity at the time of the trial. By order of court he was examined by the Department of Mental Hygiene and a report of the examination was filed. He elected a trial by jury and the case came on for trial on 31 October 1956 in the Circuit Court for Prince George's County, Judges J. Dudley Digges and John R. Fletcher presiding. The trial concluded on 2 November 1956 and the jury rendered verdicts of sane at the time of the commission of the offense, sane at the time of the trial and guilty of murder in the first degree without capital punishment. He was sentenced to life imprisonment. A motion for a new trial was made and subsequently withdrawn. No appeal from the judgment was filed. By order of court he was examined for possible defective delinquency and upon a hearing before the court on 11 March 1957 he was found to be a defective delinquent and committed to Patuxent Institution. On 26 February 1968 he filed a petition for relief under the Uniform Post Conviction Procedure Act, and after counsel was appointed to represent him, two amended petitions, one on 7 May 1968 and the other on 17 May 1968 were filed. After an evidentiary hearing on 20 May 1968 in the Circuit Court for Prince George's County the relief prayed was denied by Judge Ralph W. Powers by order of 27 May 1968 accompanied by a memorandum.

The petition for relief as amended raised six allegations of error. The application for leave to appeal, timely filed, gives as the grounds why the order should be reversed that the court erred in finding no merit as to each of the allegations and sets forth with particularity the reasons therefor. We shall consider each of the allegations but not necessarily in the order presented by the applicant and shall group them under five headings.

# I

The applicant alleged that he was denied a fair and impartial trial. This allegation encompasses three intermingled contentions, (1) that there was adverse newspaper publicity, (2) that the jury was not impartial, and (3) that his trial counsel were not competent. It appears that the applicant was represented by two experienced attorneys; one was a former State's Attorney "who had served in that office for a number of years" and the other was a former Assistant State's Attorney. The hearing court found that the representation "was of a caliber substantially above average and very likely better representation than he would have had if he engaged an attorney of his own." In a memorandum in support of the petition for relief, counsel for the applicant referred to newspaper articles "widely circulated in the county prior to verdict." He complained that none of the eight *voir dire* questions submitted asked prospective jurors if they had read any of the articles. The hearing court considered testimony given by one of the attorneys who represented the applicant at his trial. The attorney said that "by the time the case came to trial (he) believed the climate here in Prince George's County would be just as favorable, if not more so, than any other place." The hearing court stated it could not say that the decision of counsel not to exercise the right of removal (*Constitution of Maryland,* Art. IV, § 8; Md. Code, Art. 75, § 44; Md. Rules, 738) was wrong and we cannot say that the hearing court was clearly erroneous in his judgment on the evidence before it. Newspaper disclosures standing alone do not support a defendant's suggestion that he was denied a fair trial. *McLaughlin v. State,* 3 Md. App. 515. Nor can we assume in the circumstances that the jury violated its sworn duty to render a fair and impartial verdict. See *Baker v. State,* 3 Md. App. 251; *Jones v. State,* 2 Md. App. 429. There was testimony adduced at the hearing that several members of the jury were "well known at the Court House" but applicant's counsel testified that he was aware of this and said he "knew those jurors better than the State's Attorney did." The decision of counsel that the jurors were acceptable, as was the decision not to remove the case, was a trial tactic and is not sufficient to show that the applicant was not afforded genuine and effective repre-

sentation. See *McCoy v. Warden,* 1 Md. App. 108. The hearing court rejected the contentions that the applicant was denied a fair and impartial trial and effective representation and we cannot find that he was clearly erroneous in so doing.

## II

The applicant alleged that the procedure in allowing the jury to consider both the issue of sanity and the issue of guilt or innocence was improper, claiming that the sanity issue should have been determined out of the jury's presence and claiming further that the issue of his sanity at the time of the trial should have been determined first and separately from the issue of his sanity at the time of the commission of the offense. The standard for determining sanity with respect to criminal responsibility was, at the time of the applicant's trial, under the provisions of Md. Code, Art. 59, § 7 as then in effect.[1] In *McCracken v. State,* 2 Md. App. 716 we stated that it was only when the evidence was sufficient to raise the question in the minds of reasonable men whether the defendant was or was not insane at the time of the commission of the offense and at the time of the trial that the issue is submitted to the jury. We said that it was preferable, therefore, that evidence on the issue be adduced out of the presence of the jury "to avoid any possible prejudice and to obviate the necessity, when the evidence is found to be insufficient, of instructing the jury that the issue is not before them and that they are to disregard such evidence in their deliberations of whether the State has proved the commission of the crime beyond a reasonable doubt." 2 Md. App. at 720. In the instant case the applicant does not claim that the evidence on the issue was not properly submitted to the jury (expert witnesses appeared on behalf of the applicant and on behalf of the State) and if he would so claim, he could not have been prejudiced as the jury found him sane and the submission to the jury would be more than he was entitled to. See *Fowler v.*

1. Chapter 709, Acts of 1967, codified as Art. 59, §§ 7-12, changing the standard for determining sanity with respect to criminal responsibility is applicable to cases tried on and after 1 June 1967. See *League v. State,* 1 Md. App. 681, 685; *Strawderman v. State,* 4 Md. App. 689.

*State,* 237 Md. 508, 512. And if the issue was properly submitted to the jury, he cannot say that he was prejudiced by its submission. We think it clear that the statute in effect at the time of the applicant's trial contemplated, when the issue was before it, that the jury deciding the guilt or innocence of a defendant at the same time determined the issue of his sanity both at the time of the commission of the offense and at the time of the trial. Under that statute the jury was not required to state in its verdict that the defendant was so sane, it being conclusively presumed that they found the defendant sane if they did not specifically so state, although the court upon application of the State or the defendant or by its own motion could require the jury to find specially by its verdict whether the defendant was sane at the time of the commission of the offense and whether he was sane at the time of the trial. This allegation is no ground for the reversal of the order denying relief.

### III

The applicant alleged that as he was under the age of 18 years at the time of the commission of the crime and at the time of his arrest and at the time of his trial he was a "delinquent child" by the definition under Md. Code, Art. 26, § 52. He urges that the provision of the statute excluding him from such definition because the law he violated was punishable by death or life imprisonment, thus automatically waiving the jurisdiction of the juvenile court and requiring his prosecution as an adult, denied him the equal protection of the law. We see no merit to this allegation. The statutes dealing with juvenile delinquents and with adults who contribute to their delinquency have established the public policy of this State relating thereto. See *Taylor v. State,* 214 Md. 156. The exclusionary provisions as to children who violate a law punishable by death or life imprisonment or the authority of the juvenile court to waive jurisdiction in its discretion in cases involving the violation by children of laws not so punishable (Md. Code, Art. 26, § 54) have not been held unconstitutional (see *Bean v. State,* 234 Md. 432; *Snyder v. State,* 189 Md. 167) and all presumptions favor the constitutionality of a duly enacted statute. It will not be declared unconstitutional unless it plainly contravenes the federal or state constitutions. *Woodell v. State,* 2 Md. App. 433.

The statute here challenged applies equally to all those within a specified class and it is not arbitrary or unreasonable. *Celanese Corp. of America v. Davis,* 186 Md. 463. We see no denial to the applicant of equal protection of the law.

IV

The applicant alleged that the State failed to rebut the presumption that he was incapable of forming criminal intent. At common law while a person under 7 years of age and a person between 7 and 14 years of age are both presumed to be *doli incapax,* the presumption as to the latter is not conclusive as it is as to the former. The presumption as to a person between 7 and 14 years of age may be rebutted, the maxim being *"malitia supplet aetatem,"* and the burden of rebutting it is on the State. But a person who has reached the age of 14 years is presumed to be capable of criminal intention and is in the same position with regard to criminal responsibility as an adult. *Clark and Marshall, Law of Crimes,* (6th Ed.) § 6.12, pp. 391-394. "As customarily expressed there is a presumption of criminal incapacity on the part of an infant *below* the age of fourteen, which is conclusive prior to the age of seven and rebuttable thereafter." (emphasis supplied) *Perkins, Criminal Law* (1957) ch. 8, § 1, p. 731. In the instant case the applicant stated in his amended petition that his age was 14 years and 4 months "at the time of the incident." Therefore he was over the age of 14 years and the presumption did not arise. The allegation has no merit.

V

The applicant alleged that confessions, introduced in evidence over objection, "extracted from (him) after his arrest during custodial interrogation by the police, were not freely and voluntarily given under the totality of the circumstances in that they were obtained through the use of promise, threat and inducement in that:

1) (He) was held incommunicado for a period of approximately 48 hours after his arrest on May 4, 1956 despite his requests to be allowed to contact members of his family.

2) (He), after his arrest and at the outset of the cus-

todial interrogation, was not advised of his right to the presence of an attorney, of his right to remain silent, that anything he said could be used against him and that, if he could not afford an attorney, one would be appointed him.

3) (He) was induced to confess by the police in that shortly after his arrest he was forcibly taken to the scene of the incident (a third floor classroom within Maryland Park School) where the decedent was receiving last rites from a priest and told by a police officer—"you have killed this man now look at him." In addition (he) was repeatedly told by the police that if he did not confess he would get the gas chamber, that (he) was lying to them in claiming the shooting was an accident and that, if (he) continued to maintain the shooting was an accident, the police could not help him.

4) His age at the time of the confession was 14 years and 4 months.

In a memorandum of law submitted by his counsel in support of the petition it is alleged that although the confession admitted in evidence showed that the question and answer session started at 4:30 P.M. and concluded at 5:10 P.M., he was "arrested shortly after the shooting about 11:30 A.M. on 4 May 1956, and continually questioned until 4:30 P.M. when he 'confessed.' " The application for leave to appeal avers that the allegations above were "proved in substance" at the hearing.

The hearing court disposed of the allegation that the confession was involuntary by merely saying, "I conclude that not only was the confession voluntary under the test obtained in 1956, when it was given, but also its admission was an issue in the case which was adjudicated at the trial." We point out that Md. Code, Art. 27, § 645A(b), as amended, provides that "* * * an allegation of error shall be deemed to be finally litigated when the Court of Appeals or Court of Special Appeals has rendered a decision on the merits thereof, either on direct appeal or upon any consideration of an application for leave to appeal filed pursuant to § 645-I of this subtitle; or when a court

of original jurisdiction, after a full and fair hearing, has rendered a decision on the merits thereof upon a petition for a writ of habeas corpus or a writ of coram nobis, unless said decision upon the merits of such petition is clearly erroneous." Thus even assuming that the provisions of Art. 27, § 645A(b) are here applicable,[2] the finding at the trial on the merits that the confession was voluntary does not preclude the applicant from raising the question in his first post conviction petition because it was "finally litigated"; it was not "finally litigated" as no direct appeal was taken on which a decision was rendered on the merits of the question nor does it appear that the applicant sought a writ of habeas corpus or coram nobis.

We do not think that the memorandum of the hearing judge was in accordance with Md. Rule BK 45b providing that the memorandum shall include "specifically the federal and state rights involved and the reasons for the action taken thereon." It is incumbent upon the judge who conducts the post conviction hearing to make findings of fact upon all contentions raised by the petitioner. *Farrell v. Warden,* 241 Md. 46; *Szukiewicz v. Warden,* 1 Md. App. 61. We think that a mere conclusion that the confession was voluntary was not sufficient compliance with the rule. See *Tyler v. Warden,* 2 Md. App. 127. We feel that the memorandum should clearly have reflected that the hearing judge made factual findings as to each of the contentions relating to the confession and that he considered those findings in the light of the applicable federal and state law in arriving at his conclusion. We remand the case for the hearing judge to make the findings of fact indicated, after receiving such further evidence on the issue as he may deem necessary or desirable, and after making such findings, to determine whether or not the confession was freely and voluntarily made under the applicable law. See for example, *Clewis v. Texas,* 386 U. S. 707; *Davis v. North Carolina,* 384 U. S. 737; *Green v. State,*

---

2. The post conviction procedure statute, enacted by ch. 44, Acts of 1958, was not in existence at the time of the appellant's trial or during the time allowed him for direct appeal. We do not find it necessary at this time to consider whether the allegation may be deemed to have been waived under § 645A(c) of Art. 27.

236 Md. 334; *Keller v. State*, 2 Md. App. 623; *State v. Hill*, 2 Md. App. 594; *State v. Hance*, 2 Md. App. 162; *McFadden v. State*, 1 Md. App. 511; *Harris v. State*, 1 Md. App. 318.

> *Application for leave to appeal granted; case remanded for further proceedings consistent with this opinion.*