681 A.2d 501

**In re TIMOTHY F.**

**No. 67, Sept. Term, 1995.**

Court of Appeals of Maryland.

Aug. 28, 1996.

Gina Serra, Assistant Public Defender (Stephen E. Harris, Public Defender; Nancy S. Forster, Assistant Public Defender, on brief), Baltimore, for Petitioner.

Thomas K. Clancy, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for Respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

The issue that Timothy F., the petitioner, submits for our resolution is whether the evidence presented to the Circuit Court for Queen Anne's County, sitting as a Juvenile Court, was sufficient to support the finding by that court that he possessed a noncontrolled substance with the intent to distribute it as a controlled dangerous substance. On appeal, in an unreported opinion, the Court of Special Appeals held that it was and, therefore, affirmed the juvenile court's delinquency judgment. Having granted the writ of certiorari at the petitioner's request, we shall reverse.

## I.

Armed with information from a student that the petitioner, a sixth grader and, at the time, 12 years old,[1] was in possession of a controlled dangerous substance (CDS), the assistant principal of Centreville Middle School searched him. That search uncovered a medicine pill bottle containing two pieces and three crumbs of a white substance that looked like crack cocaine. The petitioner said that it was dried "milk chips." Laboratory analysis having confirmed that the substance was not crack cocaine or any other CDS, a delinquency petition was filed charging the petitioner with possession "with intent to distribute a non-controlled substance intended for use or distribution as a controlled dangerous substance."

In addition to the above facts, the State offered testimony at the delinquency hearing that the petitioner said that he got the "milk chips" from Stanley and that he, in turn, gave some

---

1. The petitioner was born on October 5, 1981 and the incident at issue occurred on February 8, 1994. The delinquency petition was filed on March 23, 1994.

of it to Giovanni W.[2]  Other testimony established that Giovanni, another sixth grader, and Stanley, an eighth grader, were brought to the principal's office at, however, different times.  Giovanni had in his possession a brown prescription bottle, containing two or three pieces of the same substance that the petitioner had.  He told the principal that it was "soap chips."  Stanley's bottle was white.  In it, as in the petitioner's and Giovanni's, were several pieces of the same substance.  Stanley volunteered that the substance was "fake crack."

The State also presented expert testimony.  The State trooper who was called to the school in response to the discovery of the subject non-controlled substances, testified that the recovered substances looked "exactly like" crack cocaine.  Another trooper confirmed that assessment, although he acknowledged that he, and anyone who "kn[e]w what crack cocaine is", could tell the difference.  That trooper further testified that a piece of crack cocaine identical in size to the piece found in the petitioner's pill bottle would have a street value of $20 and "the crumbs you give away for five or ten dollars."  Moreover, he opined that the manner in which the substance was packaged indicated that it was intended for distribution: "a lot of people that carry crack cocaine or any kind of CDS carry it in a container like [the pill bottle the petitioner was carrying], it keeps it from being crushed" and that "every time I see [drug dealers] they're always selling with a container like this."  A user does not keep crack in such a container, he asserted, unless he or she is a "user seller."  Finally, the State presented evidence, through a trooper who also was one of the instructors of the Drug and Alcohol Resistance Education Program (DARE) course given at the Middle School.  He testified that he instructed his students as to the nature and appearance of crack cocaine and how it is packaged for distribution and that he showed them facsimile crack cocaine.  He testified further that Timothy and

---

**2.**  The petitioner was tried, jointly, with Stanley T. And Giovanni W. Neither Stanley nor Giovanni, however, is involved in this appeal.

Giovanni had taken the DARE course, and thus were aware of these facts. Although uncertain about Stanley, that witness stated that it was likely that he too had taken the course since it is a mandatory course and Stanley was in the eighth grade.

The defense presented no evidence; however, in closing argument, the petitioner's attorney argued, in conformance with the State's characterization of their activity, that the petitioner and his schoolmates were "play-acting" as drug dealers. He concluded, therefore, that they did not possess the noncontrolled substance with the intent of distributing it for use or distribution as CDS.

In finding the petitioner delinquent, the juvenile court reasoned:

"[T]he statute involved here, 286B, speaks in terms of possession with intent to distribute, and as we know from dealing with controlled dangerous substances, that phrase means whether under all the circumstances it can be reasonably inferred that these people intended to distribute this substance.... So that all that one has to find is that ...— there was an intention to transfer the substance to another person on the representation that it was in fact a controlled dangerous substance ... [W]e have three people, clearly interrelated, who have in their possession, having gotten this from each other, clearly being part or [sic] the same—I think it not overstates it, conspiracy, the same—acting under the same general design, most certainly, having containers which are like containers by all the testimony in which are kept and from which are distributed controlled dangerous substances.... [W]e're not focusing, [however], on the transfers among those people, inter se, we are talking about what was the purpose for which each one of them held a container which looked as if it were—looked exactly like containers from which crack is dispensed.... The conclusion is inescapable that this substance whether in order to tease their friends, whether as a lark, whether to again [sic] pocket money or for whatever reason, the conclusion to me is inescapable that they held this for the purpose as is said in the statute of distributing this, and, again with

or without remuneration makes no difference to another person, or whether as a joke ... but the fact that these people were carrying around what they admitted they thought were soap chips or something else as totally innocuous as soap chips, with these very elaborately disguised and packaged as a controlled dangerous substance leads to only one conclusion. Frankly I would be hard put to reach any other conclusion ... I think that the point is that one does not run around and have a substance that one is palming off for fun, for profit, sport or for thrills, as a controlled dangerous substance. That is the—precisely what these three juveniles were doing. . . ."

## II.

The statute pursuant to which the petitioner was found delinquent is Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 286B. That section provides, in pertinent part:

(c) *It is unlawful for a person to* distribute, attempt to distribute, or *possess with intent to distribute, any noncontrolled substance intended by that person for use or distribution as a controlled dangerous substance* or under circumstances where one reasonably should know that the noncontrolled substance will be used or distributed for use as a controlled dangerous substance.

(Emphasis supplied). The provisions of § 286B(c) are disjunctive.

The petitioner was charged with, and found delinquent with respect to, possession of a noncontrolled substance with the intent to distribute it as a CDS, rather than with possession of that substance "under circumstances where one reasonably should know that the noncontrolled substance will be used or distributed for use as a controlled dangerous substance." This is significant. Under the latter charge, all that need be shown are the circumstances of the possession, from which the trier of fact could infer that the possessor "reasonably should know" that it would be used or distributed as a CDS. Under the former, it is not enough to show the circumstances of the

possession; instead, in addition to possession of the noncontrolled substance, the State must prove the purpose for which the accused possessed it. Consequently, in order to be sufficient to support the finding of delinquency in this case, the evidence had to show that the petitioner possessed the noncontrolled substance with two intents: to distribute it and to do so fraudulently for use or distribution as a CDS. *Gipe v. State*, 55 Md.App. 604, 614, 466 A.2d 40, 46, *cert. denied*, 298 Md. 243, 469 A.2d 452 (1983).

The State contends that the intent to distribute, as well as the intent to misrepresent a noncontrolled substance as a CDS, may be inferred from the packaging of the substance, the quantity of the substance in the petitioner's possession, and the fact that the petitioner had knowledge, acquired as a participant in the DARE course, regarding the manufacture, marketing and distribution of crack cocaine. In effect, the State is arguing that a juvenile's mere possession of a noncontrolled substance that looks, and is packaged, like a controlled substance gives rise to an inference that the juvenile intended fraudulently to distribute that substance as the CDS that it appears to be. It relies on *Gipe.*

In that case, the Court of Special Appeals upheld the conviction of a defendant, an adult, on the strength of inferences drawn from the defendant's possession of a noncontrolled substance that looked like amphetamines, a CDS. The court reasoned:

> Officer Sheppard had training in the identification of "methaqualudes" (a controlled dangerous substance) and knew how they were ordinarily packaged. Significantly, he testified that the tablets seized were packaged "in the customary manner for the way they are sold on the street in packages ranging from 50 tablets up to 100 tablets per bag." Further, he indicated that the tablets were caffeine tablets, and were similar in appearance to "street" amphetamines (the type manufactured in clandestine labs). . . . Certainly, a rational trier of fact could have reasonably inferred the "two discrete specific intentions" identified by appellant. . . . Sheppard's testimony revealed that the caffeine pills were

packaged in a manner usually used for illegal distribution, and that the tablets' physical appearance was similar to amphetamines, a controlled dangerous substance ... [T]he quantity and packaging of the pills could give rise to the logical inference that these pills were to be sold.

*Gipe,* 55 Md.App. at 614–15, 466 A.2d at 45–46.

The petitioner asserts that the State failed to prove, and the juvenile court erred in finding, that he intended fraudulently to distribute a noncontrolled substance as a CDS. He concedes, had the substance been cocaine, the possession of which is illegal, then the manner in which the substance was packaged and the amount he possessed may have been sufficient to support the finding that he intended to distribute it. But, the petitioner argues, his possession of the substance was not unlawful and the State presented no evidence to prove that he intended criminally to misrepresent the soap or milk chips in his possession as crack cocaine. The petitioner also asserts that packaging and quantity go, at most, to the issue of intent to distribute; it has no bearing on whether he intended criminally to mischaracterize what he intended to distribute. Therefore, the petitioner maintains that the only evidence of intent is what he actually did. Because when he distributed the milk chips to Giovanni, he told him what they were, that fact, he argues, tends to negate his guilt, rather than support it.

### III.

Judging the weight of evidence and the credibility of witnesses and resolving conflicts in the evidence are matters entrusted to the sound discretion of the trier of fact. *Hammond v. State,* 322 Md. 451, 463, 588 A.2d 345, 351 (1990) (citations omitted); *Binnie v. State,* 321 Md. 572, 580, 583 A.2d 1037, 1041 (1991); *Branch v. State,* 305 Md. 177, 184, 502 A.2d 496, 499 (1986); *Colvin v. State,* 299 Md. 88, 112, 472 A.2d 953, 965 (1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 226, 83 L.Ed.2d 155 (1984). When the trier of fact is the trial court, its judgment on the evidence will be set aside only if it is

clearly erroneous. *Elias v. State,* 339 Md. 169, 185, 661 A.2d 702, 710 (1995); *State v. Raines,* 326 Md. 582, 589, 606 A.2d 265, 268, *cert. denied,* 506 U.S. 945, 113 S.Ct. 390, 121 L.Ed.2d 299 (1992); *In Re Antoine H.,* 319 Md. 101, 108, 570 A.2d 1239, 1242 (1990). *See also* Maryland Rule 8–131(c)("When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses"). Appellate review of the court's judgment on the evidence is limited to determining whether there is a sufficient evidentiary basis for the court's underlying factual findings. In a criminal case, the appropriate inquiry is not whether the reviewing court believes that the evidence established guilt beyond a reasonable doubt, but rather,

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979). *See also Warsame v. State,* 338 Md. 513, 527, 659 A.2d 1271, 1278 (1995); *State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336, 337–38 (1994); *Raines,* 326 Md. at 588, 606 A.2d at 268; *McMillian v. State,* 325 Md. 272, 289, 600 A.2d 430, 438 (1992); *Wiggins v. State,* 324 Md. 551, 566–67, 597 A.2d 1359, 1366 (1989), *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1765, 118 L.Ed.2d 427 (1992); *Wilson v. State,* 319 Md. 530, 535–36, 573 A.2d 831, 833–34 (1990). This same standard of review applies in juvenile delinquency cases. *In Re Antoine H.,* 319 Md. at 107–08, 570 A.2d at 1242. In such cases, the delinquent act, like the criminal act, must be proven beyond a reasonable doubt. *Id.;* Maryland Code (1973, 1995 Repl.Vol.) § 3–819(b)(1) of the Courts and Judicial Proceedings Article ("Before a child is adjudicated delinquent, the allegations in the petition that the child has committed a delinquent act must be proved beyond a reasonable doubt.").

The intent with which an accused possesses a noncontrolled substance is, like that with which a CDS is possessed, a question of fact to be determined by the trier of fact, in this case, the court. *Collins v. State*, 89 Md.App. 273, 278, 598 A.2d 8, 10 (1991) ("Whether a defendant possessed a controlled dangerous substance with an intent to distribute is a question for the trier of fact") (citing *Gipe*, 55 Md.App. at 618, 466 A.2d at 47). Thus, at the juvenile court proceedings, the State had the burden of proving, beyond a reasonable doubt, both that the petitioner intended to distribute the noncontrolled substance in his possession to a third party and that, in doing so, he intended to misrepresent the substance as a CDS. *Gipe*, 55 Md.App. at 614 n. 5, 466 A.2d at 45 n. 5. Ordinarily, the accused's intent must be proven by circumstantial evidence. *Young v. State*, 303 Md. 298, 306, 493 A.2d 352, 356 (1985); *Weaver v. State*, 226 Md. 431, 434, 174 A.2d 76, 77 (1961). Recognizing that fact and to assist the court in determining whether § 286B has been violated, § 286B(d) prescribes factors that the trier of fact is required to "include in its consideration":

(1) Whether the noncontrolled substance was packaged in a manner normally used for the illegal distribution of controlled substances;

(2) Whether the distribution or attempted distribution included an exchange of or demand for money or other property as consideration, and whether the amount of the consideration was substantially greater than the reasonable value of the noncontrolled substance; [and]

(3) Whether the physical appearance of the noncontrolled substance is substantially identical to that of a controlled dangerous substance.

As we have seen, the State's evidence established that the petitioner, a 12–year–old boy in Middle School, possessed a noncontrolled substance and how it was packaged. It then presented expert testimony that the physical appearance of that substance closely resembled crack cocaine and that the packaging was that normally used for the illegal distribution of crack cocaine. Moreover, *via* the testimony that he took the

DARE program, the court was given evidence from which it could have concluded that the petitioner understood the significance of the quantity possessed and the manner in which the substance was packaged. The State also offered evidence of two distributions of the substance—one from Stanley T. to the petitioner and one from the petitioner to Giovanni W. And, according to the testimony, on neither occasion was the nature of the substance misrepresented. Nor did either involve, so far as the State's evidence reveals, an exchange of, or demand for, money or other property. Whether this evidence was sufficient to sustain the delinquency determination depends upon the tendency of that evidence to prove the petitioner's intent fraudulently and criminally to distribute the noncontrolled substance as real crack cocaine, the possession of a cocaine look alike not being itself unlawful.

Ordinarily the way a CDS is packaged and its quantity are circumstances from which it may be inferred that a person in possession of that CDS intends to distribute it. Arguably, the same inference is available when the substance is a noncontrolled one. Although possession of a cocaine look alike as distinguished from a real CDS is not *per se* unlawful, the way a noncontrolled substance is packaged and the amount also tend to prove the criminal intent with which it is possessed. Therefore, a person in possession of a noncontrolled substance that looks, and is packaged, like a CDS and is in an amount which, were it a CDS, would indicate an intent to distribute, may, if circumstances warrant, be found by the trier of fact to have possessed it with intent to distribute it as a CDS. *See Birchead v. State*, 317 Md. 691, 708, 566 A.2d 488, 496 (1989).

While the burden of proof placed on the State is the same whether the case is a criminal case or a delinquency proceeding, that is not the case with regard to criminal responsibility. In fact, on that issue this society views adults and juveniles quite differently. There is a presumption of criminal incapacity on the part of a child under 14 years of age. The presumption is conclusive prior to the child reaching age 7;

however, between the ages of 7 and 14, the presumption is rebuttable by the State. The opposite presumption obtains when the child attains age 14. At that time, he or she is presumed to be capable of criminal intention, thus, criminally responsible to the same extent as an adult. *In Re William A.*, 313 Md. 690, 693, 548 A.2d 130, 131 (1988); *In re Devon T.*, 85 Md.App. 674, 681, 584 A.2d 1287, 1290 (1991): *In re Davis*, 17 Md.App. 98, 101, 299 A.2d 856, (1973); *Prevatte v. Director, Patuxent Inst.*, 5 Md.App. 406, 412, 248 A.2d 170, 174 (1968); Clark and Marshall, *Law of Crimes*, (6th Ed.) § 6.12, pp. 391–394; Perkins, *Criminal Law* (1957) ch. 8, § 1, p. 731.

Although a challenge by a juvenile under the age of 14 to the sufficiency of the evidence of criminal intent does not directly implicate the presumption of criminal incapacity applicable to the juvenile, age is not totally irrelevant to the State's burden to prove that the juvenile acted with the requisite criminal intent. This means that, in determining whether the State has met that burden, the evidence, including the age of the child, must be sufficient to establish that intent.

It is well known that young children, which would include a 12–year–old sixth grade student like the petitioner, may play "cops and robbers" or pretend to be criminals without actually intending to commit crimes. We should not conclude that based solely on the fact that a 12–year–old sixth grade child is found wearing a mask and carrying a realistic looking pretend gun that the child is attempting to or intending to commit an armed robbery. We also should not conclude that based solely on the fact that a 12–year–old sixth grade child possesses a quantity of realistic looking pretend drugs that the child is attempting to or intending fraudulently and criminally to distribute the drugs as real drugs. The surrounding circumstances are important to prove that the child intends, rather than pretends, to commit a crime. In the instant case, the non-fraudulent nature of the prior distributions of the milk chips negate, rather than support, any inference of criminal intent.

■ There are two significant differences between possession of a CDS with intent to distribute and possession of a non-CDS with intent to distribute it as a CDS. The first significant difference is that in the former the mere possession of the CDS is a crime and the intent to distribute increases the degree of the crime. In the latter, possession alone is not a crime, but the gist of the crime is the intent fraudulently to distribute the substance as a CDS. The second significant difference is that the former crime requires only an intent to distribute, but the latter requires two intents: 1) the intent to distribute and 2) the intent to misrepresent the substance being distributed as a CDS. In the instant case the State's evidence was sufficient to permit a finding that the petitioner intended to distribute some of the milk chips in his possession, but the evidence was insufficient to prove that he intended to misrepresent to the receiver that the substance being distributed was a CDS.

*Felkner v. State,* 218 Md. 300, 146 A.2d 424 (1958) and *Sample v. State,* 33 Md.App. 398, 405, 365 A.2d 773 (1976) are relevant and helpful on the question of intent. In both of those cases, the issue was the defendant's intent at the time of the breaking with which he was charged. In each case, the court determined the defendant's intent by the defendant's actions at the appropriate time. This Court, in *Felkner,* pointed out:

> The appellants are charged ... with breaking with intent feloniously to commit larceny. This intent is best measured, as we have noted, by what was actually stolen. There was no evidence in the case before us of intent except that to be inferred from what the appellants did. We hold that they cannot be found on this record to have had an intent to steal goods of greater value than the value of the goods they actually stole, at the time they were stolen.

*Id.* at 311, 146 A.2d at 431. Similarly, Judge Eldridge, writing for the Court of Special Appeals, opined in *Sample:*

> [I]n the absence of any other evidence of intent at the time of the breaking, the actual value of the goods taken would

appear to be determinative of intent.... The fact that he took only $5.00 in change and not more establishes, absent any evidence to the contrary, that he did not intend *at the time of the breaking out* to "take or carry away the personal goods of another of the value of one hundred ($100.00) or more."

*Id.* at 405, 365 A.2d at 778.

The juvenile court, sitting as a trier of fact, and focusing on the interrelationship between the petitioner and his friends, the appearance of the substance and its packaging, concluded that the petitioner was in conspiracy with Stanley T. and Giovanni W., the purpose of which was the distribution of the milk or soap chips as a CDS. Discounting the significance of the petitioner's distribution to Giovanni W. and, in any event, expressly "not focusing on the transfers among these people," it expressed its belief that it would be unreasonable for the petitioner to have possessed the substance for any other purpose. In so doing, the court erred.[3]

Section 286B(c), as indicated, requires proof of both the intent to distribute and the intent to misrepresent. The failure of proof as to either is fatal. In this case, the petitioner's possession of the noncontrolled substance is circumstantial evidence bearing on the petitioner's intention to distribute and to misrepresent that substance as a CDS. As in *Felkner* and *Sample*, however, the best evidence and, indeed, the only evidence directly probative of the latter intent is that supplied by the distributions actually made. Of particular relevance is the distribution the petitioner himself made and what the petitioner did at the time that he made it. As we see it the *distribution the petitioner made to Giovanni belies any intent on his part to misrepresent the nature of the substance.*

---

**3.** The State points out that one of the troopers testified that when he met with Giovanni and his mother, Giovanni told the trooper that he did not know what he had. That is not necessarily inconsistent with the earlier State's evidence that Giovanni acknowledged that the substance he had was "soap flakes". Assuming that such testimony does undermine that aspect of the State's evidence, it does not affect the sufficiency analysis.

Moreover, to hold the evidence in this case sufficient to sustain a delinquency finding premised on § 286B(c) is to disregard the fact that petitioner is a 12–year–old sixth grade student whose actions are equally indicative of a child merely pretending to be a criminal. There is insufficient basis for the court's finding that this 12–year–old child had both the intent to distribute the milk chips and to do so by representing them as crack cocaine. *Hebron v. State,* 331 Md. 219, 234, 627 A.2d 1029, 1036 (1993).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. COSTS TO BE PAID BY QUEEN ANNE'S COUNTY.*

Dissenting Opinion by RAKER, J.

RAKER, Judge, dissenting.

I dissent because I disagree with the majority's conclusion that the evidence was insufficient as a matter of law to support the judgment of the trial court that Petitioner violated Maryland Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Article 27, § 286B(c). I would affirm the trial court.

The majority does not contest the sufficiency of the evidence to prove Petitioner's intent to distribute the substance. The majority finds, however, that the evidence was insufficient as a matter of law to prove that Timothy F. possessed the requisite intent to *misrepresent* the noncontrolled dangerous substance as a controlled dangerous substance.

Contrary to the majority's conclusion, I believe the State presented sufficient evidence to establish Petitioner's intent to misrepresent the substance as crack cocaine. Based upon a report that Timothy F. might be in possession of drugs, the assistant principal at the Centreville Middle School called him into the office and ordered him to empty his pockets. The principal found a brown prescription bottle containing two pieces and three crumbs of a white substance. The State presented expert testimony that the appearance of the substance was substantially identical to crack, and that the substance was packaged in the manner typically used to distribute

crack. Furthermore, the State presented evidence that Petitioner had knowledge of the appearance and packaging of crack because he had participated in a mandatory drug education program. Although Petitioner contends that the packaging and quantity of the substance "go, at most, to the issue of intent to distribute; it has no bearing on whether he intended criminally to mischaracterize what he intended to distribute," maj. op. at 505, the appearance and packaging of the noncontrolled substance are clearly probative of intent to misrepresent it as a controlled dangerous substance. *See* Md.Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Art. 27, § 286B(d).[1] It appears that the holding of the majority is based on two factors: the inference drawn from the evidence of the prior distributions, and the age of the juveniles.

The majority adopts the theory that Timothy F. was "a child merely pretending to be a criminal," maj. op. at 508, although the defense presented no evidence to support this contention. The only evidence presented suggesting that Timothy F. did not intend to misrepresent the substance as real crack when he distributed it to another student, Giovanni W., was that Giovanni W. told the school authorities when questioned that he knew the substance was not real crack cocaine. Giovanni W.'s statements, however, were inconsistent. *See* maj. op. at 508, n. 3. He first told the school personnel that he knew the substance was fake, but later told

---

1. The statute provides, in pertinent part, that:

    (d) For the purpose of determining whether this section has been violated, the court or other authority shall include in its consideration the following:

    (1) Whether the noncontrolled substance was packaged in a manner normally used for the illegal distribution of controlled substances;

    (2) Whether the distribution or attempted distribution included an exchange of or demand for money or other property as consideration, and whether the amount of the consideration was substantially greater than the reasonable value of the noncontrolled substance;

    (3) Whether the physical appearance of the noncontrolled substance is substantially identical to that of a controlled dangerous substance.

    Md.Code (1957, 1992 Repl.Vol., 1995 Cum.Supp.) Art. 27, § 286B(d).

the police that he did not know the nature of the substance. Nonetheless, the majority concludes that "the non-fraudulent nature of the prior distributions of the milk chips negate, rather than. support, any inference of criminal intent." Maj. op. at 507.[2] I find no evidence in this record to support the majority's conclusion that when Timothy F. distributed the substance to Giovanni, he told him anything, one way or the other, of the nature of the substance.

The issue of whether Timothy F. possessed the requisite intent to fraudulently mischaracterize the substance as a controlled substance is a question of fact to be determined by the trial court. On review, we do not make an independent assessment of whether the evidence establishes guilt beyond a reasonable doubt, but instead we must consider:

> whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also State v. Albrecht,* 336 Md. 475, 479, 649 A.2d 336, 337–38 (1994).

The majority makes much of the age of Petitioner, and refers to the common law defense of infancy, or *doli incapax.* It is unclear, however, how the defense of infancy has any bearing on the issues in this case. There was no suggestion before the trial court, or before this Court, that Timothy F.

---

2. The majority finds the cases of *Felkner v. State,* 218 Md. 300, 311, 146 A.2d 424, 431 (1958) and *Sample v. State,* 33 Md.App. 398, 405, 365 A.2d 773, 778 (1976) "relevant and helpful on the question of intent." Maj. op. at 507. In *Felkner,* the defendant was charged with breaking with intent to feloniously commit larceny. The Court found that on the record, defendant could not be found to have had an intent to steal goods more valuable than those he actually stole. In *Sample,* the Court of Special Appeals reached the same conclusion. In those cases, both Courts focused on the defendant's intent in the past, *i.e.,* the defendant's intent at the time of the breaking. Both Courts found that what was actually stolen was the best evidence of the defendant's intent. In contrast, in this case, we must determine Petitioner's intent to perform an act in the future. The *Sample* and *Felkner* rationale is simply inapposite.

lacked the *capacity* to form the criminal intent or that because of his age, he was incapable of distinguishing right from wrong. This is simply a red herring.

The Court of Special Appeals, in an unreported opinion, affirmed the conviction and held that the evidence was sufficient to establish that Timothy F. intended to distribute a noncontrolled substance as a controlled substance. I agree with that opinion. The intermediate appellate court found:

> There was evidence, as we have indicated, that appellant actually distributed the substance. There was evidence, largely uncontradicted, that it was packaged for distribution in the same manner as it would be packaged by illegal dealers and distributed in narcotic drug trafficking. There was no evidence that appellant was doing it "for fun."

> The only evidence before the trial court from the State's witnesses was that the substance was packaged in a manner indicative of distribution. In fact, appellant had both received from and distributed the substance to another co-respondent. Appellant's counsel's argument was not evidence. It is an attempt to explain the evidence but it cannot contradict the evidence before the trial court.

*     *     *     *     *     *

> If there were evidence, as opposed to argument, that appellant was just having fun, perhaps such an inference could have been made. But, as we have said, there was no such evidence presented. Even if appellant had so testified, that would not be the only inference the fact finder could have made from the totality of the evidence presented below.

> The evidence, as opposed to argument, before the trial judge, a rational fact finder, was adequate to convince and could have convinced him beyond a reasonable doubt that appellant committed the offense, *i.e.*, the delinquent act with which he was charged, when we consider the legal standards for our appellate review.

As I indicated, I also find that the evidence was sufficient for the fact finder to conclude beyond a reasonable doubt that Petitioner possessed the requisite intent.

Although the defense argued in closing that the students were merely engaged in a "game," in the absence of any evidence to support this theory, we should not reverse the trial court's decision.