6 A.3d 955

**In re MELVIN M.**

**No. 1315, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 5, 2010.

478

Brian M. Saccenti (Paul B. DeWolfe Public Defender, on the brief), Baltimore, for appellant.

Gary E. O'Connor (Douglas F. Gansler, Atty. Gen., on the brief), Baltimore, for appellee.

Panel: EYLER, DEBORAH S., KEHOE, PAUL E. ALPERT (Retired, Specially Assigned), JJ.

ALPERT, J.

The Circuit Court for Charles County, sitting as a juvenile court, found Melvin M., appellant, involved in the delinquent act of theft of property (automobile) worth $500 or more. *See* Md.Code (2002), Crim. Law Art. § 7–104(c), (g). The court found appellant not involved on a charge of fleeing and eluding a police officer. Appellant was subsequently placed on probation under the supervision of the Department of Juvenile Services and ordered to pay $100 in court costs. Appellant asks a single question on appeal: Was there sufficient evidence of possession of the stolen automobile to sustain his conviction for theft? For the following reasons, we shall reverse the judgment.

## FACTS

At appellant's trial, two witnesses testified for the State: Margaret Eads, the owner of the stolen vehicle, and Trooper Thomas Scott of the Maryland State Police. Appellant presented no testimonial evidence. Viewing the evidence in the light most favorable to the State, the following was established.

Around 9:00 a.m. on July 12, 2008, Ms. Eads parked her 1994 four-door Geo Prism at a friend's house in the Georgetown area of Washington, D.C. She left the keys in the car and the windows rolled down. She explained that the car was old, and although valuable to her, she did not believe it was valuable to anyone else. Around 5:00 p.m., she returned to where she had left her car; it was gone. The parties stipu-

lated that the car was worth more than $500, and Ms. Eads had not given anyone permission to use it.

Around 11:00 p.m. that same day, Trooper Scott was in his police car on routine patrol when he observed the Geo Prism make a left turn on a red arrow at the intersection of Mattawoman Drive and Route 301 North in Charles County. When the trooper attempted to stop the vehicle, the vehicle initially slowed down and pulled into the right lane but then pulled back into the lane of traffic and accelerated away. The trooper gave chase. During the chase, the vehicle attempted to turn from Northbound 301 onto Cedarville Road. As it did so, the vehicle hit a curb and flipped over onto its roof, landing in the parking lot of the corner 7–Eleven store.

Coincidently, several officers from the Prince George's County Police Department were sitting in a police car in the parking lot of the 7–Eleven when the accident occurred. When Trooper Scott drove his car into the parking lot, an estimated twenty to thirty seconds after he saw the vehicle start to flip over, he observed appellant and a Prince George's County police officer standing twenty to thirty feet from the vehicle. Trooper Scott parked his car and walked to where the driver of the Geo Prism was being arrested, near another convenience store across Route 301. Additionally, the trooper learned that a passenger was arrested behind the 7–Eleven. When the trooper approached the appellant, he told him that he was not driving the vehicle but was a passenger.[1] Appellant also said that he knew the vehicle was stolen. Although the trooper testified that all of the occupants had "fled" the car, when asked on cross-examination why he thought appellant had fled, he testified that he based his conclusion on the fact that all the occupants were either arrested or stopped away from the vehicle.

---

1. It is not clear from the record of the adjudication hearing whether appellant was a front seat or back seat passenger. During defense counsel's argument at the exceptions hearing, he twice stated that appellant was a back seat passenger. Neither the court nor the State corrected defense counsel's statement.

The three occupants suffered minor injuries and were taken to a hospital. A subsequent search of the vehicle revealed that the vehicle's keys were in the ignition—the ignition was not "popped." The vehicle was totaled.

After hearing the evidence and counsels' arguments, the master found appellant involved in theft but not involved in fleeing and eluding. Appellant filed exceptions, but the juvenile court agreed with the master. The court explained that although there was no evidence that appellant took the vehicle, it found appellant involved in theft based on the inference regarding the unexplained possession of recently stolen goods.

## DISCUSSION

Appellant argues that his theft conviction must be reversed. He argues that although he knew that the car was stolen, the evidence was insufficient to prove that he, a mere passenger in the car, was in possession of the vehicle. We agree and so shall reverse his conviction.[2]

 Our review in a juvenile delinquency case is "limited to whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re Heather B.*, 369 Md. 257, 270, 799 A.2d 397 (2002) (quotation marks and citations omitted). "Judging the weight of evidence and the credibility of witnesses and resolving conflicts in the evidence are matters entrusted to the sound discretion of the trier of fact." *In re Timothy F.*, 343 Md. 371, 379, 681 A.2d 501 (1996) (citations

---

**2.** Although not raised by either party at trial or on appeal, we note that Maryland has territorial jurisdiction over the matter although the original taking occurred in Washington, D.C. *See Allen v. State,* 171 Md.App. 544, 557–61, 911 A.2d 453 (2006), *aff'd,* 402 Md. 59, 935 A.2d 421 (2007). Additionally, we note that Charles County was a proper venue for trial. The stolen car was initially observed in Charles County and ultimately stopped in Prince George's County. Theft is a continuing crime and may be prosecuted in any county in which it occurs. *Grant v. State,* 76 Md.App. 165, 543 A.2d 897 (1988), *rev'd on other grounds,* 318 Md. 672, 569 A.2d 1237 (1990).

omitted). "When the trier of fact is the trial court, its judgment on the evidence will be set aside only if it is clearly erroneous." *Id.* at 379–80, 681 A.2d 501. (citations omitted).

As with direct evidence, circumstantial evidence will sustain a conviction when all the facts taken together do not require that the fact-finder resort to speculation or mere conjecture. *See Moye v. State,* 369 Md. 2, 13, 796 A.2d 821 (2002) ("A conviction based solely on circumstantial evidence should be sustained only where 'the circumstances, taken together, are inconsistent with any reasonable hypothesis of innocence.'") (quoting *Wilson v. State,* 319 Md. 530, 537, 573 A.2d 831 (1990)). *See also Taylor v. State,* 346 Md. 452, 458, 697 A.2d 462 (1997) ("[W]hen the evidence equally supports two versions of events, and a finding of guilt requires speculation as to which of the two versions is correct, a conviction cannot be sustained.") (citations omitted). "Where it is reasonable for a trier of fact to make an inference, we must let them do so, as the question is not whether the trier of fact could have made other inferences from the evidence or even refused to draw any inference, but whether the inference it did make was supported by the evidence." *State v. Suddith,* 379 Md. 425, 447, 842 A.2d 716 (2004) (quotation marks, brackets, and citation omitted).

Section 7–104(c) of the Maryland Consolidated Theft Statute provides:

A person may not *possess* stolen personal property knowing that it has been stolen, or believing that it probably has been stolen, if the person:

(i) intends to deprive the owner of the property;

(ii) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(iii) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

(Emphasis added). If the property is worth $500 or more, the crime is a felony subject to imprisonment not to exceed 15 years and/or a fine not to exceed $25,000. Crim. Law § 7–104(g). "We have long and consistently held that exclusive possession of recently stolen goods, absent a satisfactory explanation, permits the drawing of an inference of fact strong enough to sustain a conviction that the possessor was the thief[.]" *Burns v. State*, 149 Md.App. 526, 552, 817 A.2d 885 (2003) (quotation marks, citation, and emphasis omitted).

In sum, possession is an element of the crime of theft and a requirement for application of the above inference. The question before us then is whether there was sufficient evidence of possession to warrant application of the inference and sustain the conviction for theft. We hold that there was not.

Possession may be actual or constructive, exclusive or joint. *Taylor*, 346 Md. at 458, 697 A.2d 462. While the theft statute does not define possession, the dangerous substances section does. Section 5–101(u), Crim. Law Art., defines "possess" as "to exercise actual or constructive dominion or control over a thing by one or more persons." "Control" of a dangerous substance has been defined as "the exercise of a restraining or directing influence over the thing allegedly possessed." *Taylor*, 346 Md. at 457, 697 A.2d 462 (quotation marks and citations omitted). In the dangerous substance context, we have listed the following factors as relevant to determine possession:

> 1) proximity between the defendant and the contraband, 2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, 3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or 4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband.

*Larocca v. State*, 164 Md.App. 460, 473, 883 A.2d 986 (quoting *Folk v. State*, 11 Md.App. 508, 518, 275 A.2d 184 (1971)), cert. denied, 390 Md. 285, 888 A.2d 342 (2005).

In *Burns, supra,* we noted the "[s]hifting notions of posses-
sion in different contexts[.]" *Burns,* 149 Md.App. at 551, 817
A.2d 885. In that case, Earl Burns was one of three occu-
pants—the right, rear-seat passenger—in a vehicle stopped by
the police. *Id.* at 530, 817 A.2d 885. The police recovered
from the car, among other things, a loaded stolen handgun
under the front passenger seat. *Id.* Burns was convicted of,
among other things, illegal possession of a regulated firearm
by a convicted felon and theft of the handgun. Burns appeal-
ed raising the sufficiency of the evidence to sustain his convic-
tions. We affirmed his possession conviction but reversed his
theft conviction.

In the context of determining whether there was sufficient
possession to support his convictions for possession of a hand-
gun and theft of a handgun, we stated:

> What is illustrated by the present contention is that the
> notion of possession in the context of one type or category
> of criminal behavior cannot too glibly or easily be equated
> with possession in the different context of another type or
> category of crime. All possessions are not the same, and
> some possessions are more logically potent than others.

> With respect to crimes involving such things as narcotics
> or guns, for instance, the focus of the law is essentially on
> forbidden and dangerous behavior. The possessory crimes
> in those areas deliberately cast a broad net, ensnaring even
> peripheral participants who may be only joint possessors for
> an hour or two. The focus is on the conduct of the moment,
> and the possession may carry no deeper implications.

> With respect to crimes against property, by contrast, the
> focus is on the item of property, and the concept of posses-
> sion, either as a crime in its own right or as an evidentiary
> predicate for another larceny-related crime, casts a much
> tighter net with a narrower mesh. Particularly as an
> evidentiary predicate for scienter, possession generally con-
> templates something more by way of continuing and exclu-
> sive exercise of dominion and control over property than is
> required to show that a defendant was merely a participant

or joint possessor in some variety of prohibited, but possibly short-lived, behavior.

*Id.* at 551, 817 A.2d 885. We further stated:

There may, of course, be factual scenarios in which joint possessors of stolen property may both, or all, be in such firm and continuing control of the property as to support an inference of mutual guilt even with respect to crimes against property. Frequently, however, the joint possession, albeit enough to convict of a crime involving forbidden behavior, does not establish enough of a connection to convict of a property crime.

As a matter of law, it cannot be said that joint possession of a stolen item either is or is not an adequate predicate from which to infer that a particular joint possessor was the thief of the item or had knowledge of the theft. There is no uniform answer. The adequacy of the predicate, as a pure matter of fact, will depend upon the random and ad hoc circumstances of each particular instance of joint possession.

*Id.* at 553, 817 A.2d 885. *See also Smith v. State,* 415 Md. 174, 999 A.2d 986 (2010) (discussing the parameters of joint possession in the context of controlled dangerous substance laws).

The Maryland appellate courts have not addressed the question before us, whether a mere passenger in a car that he knows is stolen may be convicted of the theft of the car.[3] Other jurisdictions that have addressed the question before us

---

**3.** Interestingly, although we found no Maryland cases in which a mere passenger in a car that he knows is stolen was convicted of theft of the car, we found cases where such a person was convicted of unauthorized use. *See In re Levon A.,* 361 Md. 626, 762 A.2d 572 (2000); *In the matter of Tyrek S.,* 351 Md. 698, 720 A.2d 306 (1998); *Curry v. State,* 235 Md. 378, 201 A.2d 792 (1964), *cert. denied,* 379 U.S. 1004, 85 S.Ct. 729, 13 L.Ed.2d 705 (1965); *Anello v. State,* 201 Md. 164, 93 A.2d 71 (1952).

The crime of unauthorized use provides: Without the permission of the owner, a person may not take and carry away from the premises or out of the custody of another or use of the other ... any property, including ... a motor vehicle[.] Crim. Law § 7–203(a). The crime is a misdemeanor subject to imprisonment of not less than six months and not more than four years and/or a fine of not less than $50 and not more than $100. Crim. Law § 7–203(b).

have held that mere presence in a vehicle, even with knowledge that the vehicle is stolen, is not enough to establish possession of a stolen vehicle to support a theft conviction. *See Cooper v. State,* 281 Ga.App. 882, 637 S.E.2d 480 (2006) (presence in rear back seat of stolen vehicle is insufficient to establish possession to support theft conviction even with knowledge that vehicle is stolen); *Reese v. Commonwealth,* 230 Va. 172, 335 S.E.2d 266 (1985) (mere presence of back seat passenger in a stolen vehicle insufficient to establish possession to support larceny conviction); *Nelson v. Commonwealth,* 12 Va.App. 268, 403 S.E.2d 384 (1991) (defendant's fingerprint in the rear passenger window of a stolen vehicle insufficient to establish possession to support a larceny conviction of the stolen vehicle); *G.C. v. State,* 560 So.2d 1186 (Fla.App.1990) (back seat passenger in a vehicle with a popped ignition and appellant knew the vehicle was stolen insufficient to establish theft because no showing that passenger exercised dominion or control over the stolen car); and *People v. Rivera,* 82 N.Y.2d 695, 601 N.Y.S.2d 470, 619 N.E.2d 407 (1993) (insufficient evidence of possession to support theft conviction where defendant sat in the passenger seat of a car that he knew was stolen). Although other courts have held that mere presence alone is insufficient to establish possession, they have held that presence plus other incriminating evidence may be sufficient to establish theft. *Cf. Commonwealth v. Johnson,* 7 Mass.App.Ct. 191, 386 N.E.2d 798 (1979) (evidence of flight from the police, using a false name, or use of the car in a crime suffices to send the question of whether the defendant possessed the vehicle to the jury in a theft trial), *Lynch v. State,* 829 So.2d 371 (Fla.Dist.Ct.App. 4th Dist.2002) (no evidence that a passenger exercised control over the stolen vehicle where he did nothing inconsistent with the attitude or conduct of a mere passenger and there was no evidence of any relationship between the driver and passenger), and *Commonwealth v. Carson,* 405 Pa.Super. 492, 592 A.2d 1318, 1322–23 (1991) (holding that evidence was sufficient to sustain defendant passenger's conviction of theft of automobile when defen-

dant passenger, or other passenger, and driver all jumped out of car and fled upon being approached by the police.)

Here, the juvenile court relied on the Court of Appeals decision in *Curry v. State, supra,* to apply the theft inference regarding exclusive possession of recently stolen goods and to convict appellant of theft. In that case, five hours after a car was taken, Curry told a person that the stolen car belonged to him. Several hours after that remark, Curry and his codefendant were seen riding in the car (no evidence was presented as to who was driving). Fifteen minutes later, the police observed the two within two blocks of the car. Curry and his codefendant were charged with theft and unauthorized use. The jury acquitted them of theft and convicted them of unauthorized use.

Curry appealed; his co-defendant did not. The issues on appeal were whether there was sufficient evidence to support the unauthorized use conviction because a State's witness allegedly bore a grudge against Curry and whether the arrest was illegal. In addressing the latter issue, the Court stated that Curry's possession of recently stolen goods allowed the police to infer that Curry was the thief rendering the arrest lawful. *Curry,* 235 Md. at 381, 201 A.2d 792.

■ We find *Curry* inapplicable for two reasons. First, the possession question was raised in the context of probable cause for the police to arrest for theft. Probable cause requires "a lot less" of a connection than the beyond a reasonable doubt standard. *Burns,* 149 Md.App. at 540, 817 A.2d 885. Second, Curry's statement that he owned the car clearly established possession. No such facts are present here.

The State cites and quotes extensively from *Hatcher v. State,* 177 Md.App. 359, 935 A.2d 468 (2007), in support of its argument that it proved possession so as to sustain appellant's theft conviction. We find *Hatcher* inapplicable to the case before us.

In *Hatcher,* officers observed the driver of a vehicle run a red light and drive at an excessive speed. The police stopped

the vehicle and learned that it had been stolen; Hatcher was a back seat passenger. Hatcher moved to suppress the cocaine and paraphernalia the police found on Hatcher's person pursuant to a search incident to arrest. The motion was denied. Following his conviction for possession with the intent to distribute, Hatcher appealed that conviction and we affirmed. We held that police had probable cause to believe that Hatcher, a back-seat passenger in a car that has been reported stolen, had committed a crime of theft so as to support his arrest. *Hatcher,* 177 Md.App. at 387, 935 A.2d 468. In reaching that conclusion, we stated that "[i]t is important to reiterate how significantly less of a connection need be shown to establish probable cause than need be shown to support a guilty verdict." *Id.* In concluding that there was sufficient evidence of possession to support the probable cause determination, we noted:

> When balancing the interests of the individual riding in a stolen car against those of society it is clear that the interests of society prevail. A finding of no probable cause forces police to allow potential criminals in such a situation to go free only to be able to hinder society again by repeating the crime. On the other hand, a finding of probable cause allows the police to detain the occupant of a stolen car long enough to find out what involvement, if any, the suspect had in the theft itself. The decision here is an easy one. The interests of society must prevail in this situation. The burden to the individual who had nothing to do with the car's theft will, after explanation, be minimal.

*Id.* at 391, 935 A.2d 468 (quotation marks and citation omitted).

The State presses its point and directs us to that portion of *Hatcher* which discusses the Supreme Court decision of *Maryland v. Pringle,* 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). In *Pringle,* three men occupied a car stopped by the police for speeding. Pringle was a front-seat passenger. The driver consented to a search of the car and the police found a large quantity of cash in the glove compartment and baggies of cocaine behind the back seat armrest. None of the occu-

pants admitted to owning the drugs or money and all were arrested on possession charges. At the police station, Pringle admitted during questioning that the drugs and money belonged to him. He moved to suppress his confession as fruit of an illegal arrest, which was denied, and he was subsequently convicted of possession with intent to distribute cocaine and possession of cocaine.

The Supreme Court granted certiorari on whether the police officers had probable cause to believe that Pringle, a passenger in the car, had committed the crime of possession. The Court held that the officers did have probable cause to arrest appellant for possession, stating:

> We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus, a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession, either solely or jointly.

*Pringle,* 540 U.S. at 372, 124 S.Ct. 795. The Supreme Court further stated, "a car passenger ... will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Id.* at 373, 124 S.Ct. 795. The Court concluded: "[W]e think it reasonable for the officer to infer a common enterprise."

*Hatcher* and *Pringle,* like *Curry,* however, are probable cause cases. A determination of probable cause for the police to arrest has little, if any applicability, to the sufficiency question before us. Moreover, as discussed in *Burns,* possession of drugs and possession of a car to sustain a conviction for theft of the car engage shifting standards of possession. Drugs and cars are not easily interchanged for possession purposes. Possession of drugs in a common, closely confined area, such as a living room or a car, denotes that the person has a directing influence over the drugs, that the person would at some point take control of the drugs and use them. *See Smith v. State, supra.* That same reasonable inference usual-

ly does not apply to a mere passenger in a car. The person who has a directing influence over a car, determining if and where the car goes and how fast, is generally the driver, as that person is in command of the steering wheel and acceleration. Generally, that position is not "passed around" as one might "pass around" a controlled narcotic. Finally, when a joint enterprise or acting in concert inference has been permitted in this context, it has been based on evidence that the driver and passengers all reacted to being approached by the police by fleeing from the stolen vehicle.

In a last effort to press its point, the State argues that here, as in *Carson*, there was more evidence than appellant's mere presence in the car, pointing out that appellant fled from the police. The State's argument is meritless. Contrary to the State's argument, there was no evidence that appellant fled from the police as the court specifically pointed out when it found appellant not involved in fleeing and eluding an officer.

■ We are persuaded by the decisions in our sister jurisdictions that mere presence in the vehicle, without more, is insufficient to show possession to sustain a conviction for theft of an automobile. Rather, the State must present some evidence that the accused took some action which demonstrated his restraining or directing influence over the car. We note that the unauthorized presence in a vehicle is already proscribed by another statute, unauthorized use. Because the State failed to present any facts, direct or circumstantial, demonstrating appellant's dominion or control over the vehicle, we must reverse his conviction.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY CHARLES COUNTY.**