HAROLD PHILLIP JOHNSON *v.* STATE
OF MARYLAND

[No. 188, Initial Term, 1967.]

488

*Decided December 5, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and DIGGES, J., Chief Judge of the Seventh Judicial Circuit, specially assigned.

*Norman N. Yankellow,* with whom was *G. Denmead LeViness* on the brief, for appellant.

*Thomas A. Garland, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Martin Levinson, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

`PER CURIAM.

The Appellant, Harold Phillip Johnson, and his co-defendant below, Charles R. Brown, Jr., were convicted of unauthorized use of an automobile under Md. Code, Art. 27, Sec. 349, by Judge J. Gilbert Prendergast, sitting without a jury, in the Criminal Court of Baltimore and each was sentenced to the Maryland Correctional Institution for an indeterminate period, not to exceed three years. Both appealed to this Court but Brown subsequently dismissed his appeal.

Johnson's sole contention is that the evidence was legally insufficient to sustain his conviction.

The record indicates that on March 8, 1966, at approximately 3:00 A.M., a police officer on routine patrol, observed a 1957 Chevrolet automobile parked on a public street with exhaust

fumes emitting therefrom. Upon investigation, he found that the temporary license plates thereon had expired and, as he approached the car, the two individuals in the front seat "ducked down." Upon questioning, Brown, who occupied the driver's seat, admitted that he did not own the car, but stated he had a title for it. The title he produced was for a car registered as "junk." The officer was unable to check the serial number because the serial number plate had been removed from the car. Brown produced a key for the ignition and, according to the officer, Johnson, who was sitting in the front passenger seat, produced one which he said was for the trunk. The officer noted that the car had been sprayed with white paint and he observed "small jumper cables" on the front seat.

Brown and Johnson were thereupon arrested and taken to the police station where Brown gave a written statement in which he admitted having taken the car three or four weeks before, but claimed that he took it from a location several miles from the place where the owner said she had last parked it. Johnson gave no statement, but testified in his own defense that he thought Brown owned the car and accounted for his presence in the car at the time of his arrest by asserting that he and Brown were awaiting the arrival of a friend of Brown's to accompany them to a produce terminal where they hoped to obtain temporary employment, although he had previously testified that he was regularly employed. He denied any knowledge of a piece of paper found in the car with his father's name thereon. He conceded that he had given an automobile key to the officer but claimed it was the key to a car that "I used to own." He admitted that at the time of his arrest he was on parole from a conviction for automobile larceny in 1965.

It is contended on Johnson's behalf that since there was no evidence that he was responsible for the larceny of the automobile, he could not be found guilty of unauthorized use. Such a contention, however, is based on a misconception of the elements constituting the crime.

The scope of the crime was delineated in *Anello v. State,* 201 Md. 164, 167, as follows:

"In Maryland it is a misdemeanor for any person, his aiders or abettors, to take and carry away out of

the custody or use of any other person any of the enumerated kinds of property, including motor vehicles, although it may appear from the evidence that the offender, his aiders and abettors, took and carried away the property for his or their present use, and not with the intent of appropriating or converting the same. Code, 1951, art. 27, sec. 415. This statute originated in 1880 when the Legislature created the misdemeanor of larceny of the use of any horse or other animal or any carriage or other vehicle, though taken for present use, and not with the intent of appropriating or converting the same."

The Court continued:

"* * * intent to deprive the owner of his possession includes future possession and is not limited, as in common-law larceny, to a taking out of present possession. Therefore, participation in the continued use of the car after the original taking would manifest an intent to deprive the owner of his possession during such participation."

Thus, in order to convict for larceny of use it is not essential to prove that the accused took the property from the owner. Participation, alone, in the continued use of the vehicle by a passenger with the requisite criminal intent is sufficient to sustain a conviction. In the case at bar, there is no question that the car was stolen and that Johnson, as a passenger therein at the time of his arrest was participating in its use, to the deprivation of the owner. There remains only to determine whether there was legally sufficient evidence of Johnson's criminal intent or guilty knowledge.

In making this determination, it must be borne in mind that in a non-jury case, as here, it is not the function of this Court to decide whether we might have viewed the evidence in such a light as to reach a conclusion contrary to that of the trial judge, but, rather, whether there was legally sufficient evidence from which the trial judge could be convinced beyond a reasonable doubt of the accused's guilt. In other words, if the rec-

ord shows any relevant evidence, or proper inferences from such evidence, upon which the trial judge could properly find the accused guilty, then his judgment must stand. *Hutchinson v. State,* 1 Md. App. 362; *Sherrod v. State,* 1 Md. App. 433; *McFadden v. State,* 1 Md. App. 511.

In the case at bar, there was evidence that Johnson possessed a key to the trunk of the car; that he endeavored by "ducking down" to escape being observed by the officer; that the paper found in the car with his father's name on it was evidence, inferentially, of his prior use of the car; the reason he assigned for being in the car at 3:00 in the morning is unconvincing— these factors, in our opinion, constituted legally sufficient evidence from which the trial judge could find the elements of guilty knowledge or criminal intent which are requisite to sustain his judgment that Johnson was guilty of unauthorized use of the vehicle. As stated in *Anello, supra:*

> "While guilty knowledge is essential to a conviction of a person accused of larceny of use, such knowledge may be inferred from facts and circumstances such as would cause a reasonable man of ordinary intelligence, observation and caution to believe that the property had been unlawfully taken."

The trial judge was under no obligation to believe Johnson's denials or explanations. *Logan v. State,* 1 Md. App. 213. He had the benefit of observing the demeanor of the witnesses, including Johnson; he was exposed to the flavor and atmosphere of the trial, a benefit which is not accorded us by the written record. Under Md. Rule 1086, we are proscribed from setting aside the judgment of the lower court unless we are convinced that the judgment was clearly erroneous. Giving due regard to the opportunity of the lower court to judge the credibility of the witnesses, as required by the Rule, we cannot say that the Appellant's conviction on the evidence was clearly erroneous.

*Judgment affirmed.*