78 A.3d 431

**In re LANDON G.**

**No. 2749, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Oct. 30, 2013.

484

Claudia Cortese (Paul DeWolfe, Public Defender, on the brief), Baltimore, MD, for appellant.

Ryan Dietrich (Douglas Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: MEREDITH, WOODWARD, W. MICHEL PIERSON (Specially Assigned), JJ.

WOODWARD, J.

On December 23, 2009, the Circuit Court for Prince George's County, sitting as a juvenile court, found appellant, Landon G., a juvenile, involved in the delinquent acts[1] of criminal possession of stolen property, in violation of Maryland Code (2002), § 7–104(c) of the Criminal Law Article ("C.L."); unauthorized use of a motor vehicle, in violation of C.L. § 7–203; motor vehicle theft, in violation of C.L. § 7–105; and related offenses. Appellant was adjudicated a delinquent and subsequently placed on probation under the supervision of the Maryland Department of Juvenile Services and ordered to pay restitution in the amount of $120.

On appeal, appellant presents one question for our review,[2] which we have rephrased and divided into three questions to facilitate our analysis:

I. Was there sufficient evidence to support the finding of appellant's involvement in the crime of criminal possession of stolen property, in violation of C.L. § 7–104(c)?

II. Was there sufficient evidence to support the finding of appellant's involvement in the crime of unauthorized use of a motor vehicle, in violation of C.L. § 7–203?

III. Was there sufficient evidence to support the finding of appellant's involvement in the crime of motor vehicle theft, in violation of C.L. § 7–105?

For the reasons set forth herein, we shall affirm the judgment of the trial court.

---

1. A delinquent act is defined as "an act which would be a crime if committed by an adult." Md.Code (2006), § 3–8A–01(*l*) of the Courts and Judicial Proceedings Article.

2. Appellant's question, as stated in his brief, is: "Was the evidence sufficient to support [appellant]'s finding of delinquency in light of *In re Melvin M.*, 195 Md.App. 477, [6 A.3d 955] (2010)?

## BACKGROUND

At the adjudicatory hearing on December 23, 2009, the following evidence was adduced.

On September 17, 2009, Wendy Pittman notified the police that her four-door 2006 Honda Accord had been stolen from where it was parked in the front of her home. Pittman had not given anyone permission to use her vehicle and did not see who took it.

In the afternoon of September 26, 2009, Pittman was driving home from church when she observed her stolen vehicle make a right turn out of a Shell gas station onto Oxon Hill Road in Prince George's County. Pittman immediately called 911 to report that she had spotted her vehicle. Pittman then followed the vehicle for about thirty to forty-five minutes prior to the arrival of the Prince George's County police. She testified that at one point the vehicle went into the Maplewood subdivision and parked; the occupants then went into a house. Later, when the occupants exited the house and left in the vehicle, Pittman began to follow the vehicle again.

Officer Joseph Keifline and his partner, Officer Horne,[3] of the Prince George's County Police Department received the 911 report, responded to the area, and observed the Honda being followed by Pittman in a black BMW. The officers, who were in a marked patrol car, followed the Honda into a cul-de-sac, at which point the officers activated the patrol car's emergency lights. Officer Keifline testified that the stolen vehicle "made a U-turn" in the cul-de-sac and "headed towards [the] police cruiser." The vehicle then drove through the front yards of several residences and came to a stop. At that point, five individuals, including appellant, got out of the vehicle and fled on foot.[4] According to Officer Keifline, they "ran through the yard, over the fence, into the next street."

---

3. Officer Horne's first name is not indicated in the record.

4. Officer Keifline testified that he saw appellant get out of the vehicle, but he did not observe from which side of the vehicle appellant exited.

The vehicle was left in gear and continued to move forward until it hit a telephone pole.

Officer Horne got out of the patrol car and chased appellant and the four other individuals on foot. Officer Keifline, meanwhile, drove around the neighborhood in the patrol car and in about two or three minutes apprehended appellant and Patrick McB. ("Patrick"), the driver of the vehicle.[5] Later, when Pittman recovered the vehicle, it was being operated with the keys. Pittman also testified that on the day that her car was taken, September 17, 2009, the car had a value of $22,000.

At the adjudicatory hearing, Patrick testified on behalf of the defense that, on September 26, 2009, he was walking to the barbershop when an individual named "JJ" pulled up in a Honda Accord and offered to lend the vehicle to Patrick.[6] Patrick accepted the offer. According to Patrick, the vehicle was being operated with the keys when he obtained it from JJ.

Thereafter, Patrick picked up appellant. Patrick testified that his family and appellant's family "have been friends for as long as we can remember." Appellant knew that Patrick did not own a car. Patrick testified that, when appellant entered the vehicle, the following conversation took place:

> I told [appellant] that I got the car from this guy I knew around the neighborhood. And I think [appellant] asked me, was it stolen. I said, no, because the keys, and I told him that it was his [JJ's] vehicle, and we were just going to go to our friend's house, and we'll back [sic], drop them off.

After appellant got in the vehicle, Patrick picked up three more people. Patrick drove the vehicle for "45 minutes to an hour" before he noticed that he was being followed by a police car. On cross-examination, Patrick testified that he attempt-

---

**5.** Officer Keifline testified that he saw Patrick exit from the driver's side of the vehicle. Furthermore, Patrick testified that he was, at all relevant times, the driver of the vehicle.

**6.** Patrick testified that he knew JJ from "around that neighborhood," but did not know his full name.

ed to evade the police officers and that he and appellant ultimately fled from the vehicle on foot:

> [THE PROSECUTOR]: ... And you see the police coming up upon you. And, even though you've got this car and it's yours' [sic] to use, you try to evade them?

> [PATRICK]: Yes. Because, at that time, after I noticed the police car, everything started running through my mind. I assumed that [the vehicle] had to have been stolen, because why else would, you know, would [the police] be trying to stop me?

> [THE PROSECUTOR]: Okay. And you did try to evade the police?

> [PATRICK]: Yes, sir.

* * *

> [THE PROSECUTOR]: ... And [both you and appellant] fled and jumped over fences to get away from the police?

> [PATRICK]: Yes, sir.

Appellant did not testify at his trial.

Appellant was charged, as a juvenile, with nine separate theft-related and malicious destruction offenses: motor vehicle theft, in violation of C.L. § 7–105 (Count 1); criminal possession of stolen property with a value of $500 or more, in violation of C.L. § 7–104(c) (Count 2); criminal possession of stolen property with a value of $500 or less, in violation of C.L. § 7–104(c) (Count 3); unauthorized use of a motor vehicle, in violation of C.L. § 7–203 (Count 4); tampering with a motor vehicle without the consent of its owner, in violation of Maryland Code (1977, 2009 Repl.Vol.), § 14–104(a) of the Transportation Article (Count 5); malicious destruction of property in excess of $500, in violation of C.L. § 6–301 (Count 6); malicious destruction of property not exceeding $500, in violation of C.L. § 6–301 (Count 7); conspiracy to commit motor vehicle theft, in violation of Maryland common law (Count 8); and conspiracy to commit criminal possession of stolen property with a value of $500 or more, in violation of Maryland common law (Count 9).

At the conclusion of the December 23, 2009 trial, the trial court found appellant involved on all counts, with the exception of Count 5, the unlawful tampering with a motor vehicle. The trial judge merged Counts 2, 3, 4, 6, and 7 into Count 1 (motor vehicle theft), and merged Count 9 into Count 8 (conspiracy to commit motor vehicle theft).[7] The court placed appellant on an indefinite period of supervised probation and ordered him to pay restitution in the amount of $120 to Pittman.[8]

This timely appeal followed.

### STANDARD OF REVIEW

"Our standard of review for sufficiency of trial evidence is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt when the evidence is presented in the light most favorable to the State." *Bible v. State*, 411 Md. 138, 156, 982 A.2d 348 (2009) (quotation marks omitted). "This same standard of review applies in juvenile delinquency cases. In such cases, the delinquent act, like the criminal act, must be proven beyond a reasonable doubt." *In re Timothy F.*, 343 Md. 371, 380, 681 A.2d 501 (1996) (citation omitted).

We are cognizant of the principle that the fact-finder "possesses the ability to choose among differing inferences that might possibly be made from a factual situation and [the appellate court] must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [the

---

7. We note in passing that under Maryland Code (2002), § 7–105(d)(2) of the Criminal Law Article ("C.L."), Count 1 (violation of C.L. § 7–105) should have been merged into Court 2 (violation of C.L. § 7–104(c)), and Count 8 should have been merged into Count 9. Because appellant does not claim error on this issue, we will not address it. *See* Md. Rule 8–504(a)(3), (6).

8. In its order, dated December 28, 2009, the court placed appellant on an indefinite period of supervised probation with the "special condition" that appellant complete the Take Charge program. The court, upon motion by appellant, later modified the probation order and struck the condition that appellant complete the Take Charge program.

appellate court] would have chosen a different reasonable inference." *Bible*, 411 Md. at 156, 982 A.2d 348 (alterations in original) (quotation marks omitted); *see also State v. Smith*, 374 Md. 527, 534, 823 A.2d 664 (2003) ("We give due regard to the [fact-finder's] findings of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses." (alteration in original) (quotation marks omitted)). "If the evidence either showed directly, or circumstantially, or supported a rational inference of facts which could fairly convince a trier of fact of the defendant's guilt of the offenses charged beyond a reasonable doubt[,] then we will affirm the conviction." *Bible*, 411 Md. at 156, 982 A.2d 348 (alteration in original) (quotation marks omitted).

## DISCUSSION

### I.

### Criminal Possession of Stolen Property—C.L. § 7–104(c)

On appeal, appellant argues that there was insufficient evidence in the record to show that he was involved in the theft of Pittman's vehicle, in violation of C.L. § 7–104(c). According to appellant, § 7–104(c) criminalizes "the possession of stolen property knowing that it has been stolen or believing that it probably has been stolen." Appellant claims, relying principally on this Court's decision in *In re Melvin M.*, 195 Md.App. 477, 6 A.3d 955 (2010), that his "presence in the stolen car two weeks" after the car was reported as stolen, "along with his flight upon a police chase and without any knowledge on his part that the car he was in was stolen," was not sufficient "to establish possession of recently stolen goods and thus theft of the vehicle."

In response, the State argues that the trial court's determination that appellant was involved in the theft of the vehicle, in violation of § 7–104(c), must be sustained, because "the evidence permits the inference that [appellant] was both in 'possession' of the vehicle and aware that it had been stolen."

Specifically, the State points out that appellant fled from the vehicle after the vehicle was stopped by the police, and contends that such flight could have "been the result of his consciousness of guilt with respect to the theft of the vehicle." Citing *In re Melvin M.*, the State asserts that where, as here, "presence is coupled with other evidence of guilt such as flight, the evidence [is] . . . sufficient to support the inference that the passenger, as a recent possessor of the stolen vehicle, was involved in its theft" under § 7–104(c).

C.L. § 7–104(c), which is titled "Possessing stolen personal property," provides, in relevant part:

A person may not **possess stolen personal property knowing that it has been stolen, or believing that it probably has been stolen,** if the person:

(i) intends to deprive the owner of the property;

(ii) willfully or knowingly uses, conceals, or abandons the property in a manner that deprives the owner of the property; or

(iii) uses, conceals, or abandons the property knowing that the use, concealment, or abandonment probably will deprive the owner of the property.

(emphasis added).

Thus the crime of possessing stolen property under § 7–104(c) consists of four elements: (1) the property must be stolen; (2) the defendant must be in possession of the stolen property; (3) the defendant must know that the property has been stolen or believe that it probably has been stolen; and (4) the defendant must intend or act to deprive the owner of the property in the manner described in § 7–104(c)(i), (ii), or (iii). In the case *sub judice,* appellant challenges the sufficiency of the evidence supporting two of the above elements, to wit, appellant's possession of the stolen vehicle and knowledge that the vehicle was stolen or belief that the vehicle probably had been stolen.

### *Possession of the Stolen Vehicle*

■ In the recent case of *In re Melvin M.*, this Court addressed the issue of whether the mere presence as a passenger in a stolen vehicle is sufficient to establish possession of that vehicle to support a conviction of theft of property under C.L. § 7–104(c). 195 Md.App. at 485–86, 6 A.3d 955.

In *In re Melvin M.*, on July 12, 2008, at about 9:00 a.m., the owner of a vehicle parked her car at a friend's house in the Georgetown area of Washington D.C. and left the keys inside the vehicle. *Id.* at 479, 6 A.3d 955. When the owner returned to her friend's house at around 5:00 p.m. that day, her vehicle was gone. *Id.* At 11:00 p.m. the same day, fourteen hours after the owner parked the vehicle at her friend's house, a Maryland state trooper observed the stolen vehicle make a left turn on a red arrow on Route 301 in Charles County, Maryland. *Id.* at 480, 6 A.3d 955. The trooper attempted to stop the vehicle, but the vehicle sped away and the trooper gave chase. *Id.* During the chase, the vehicle hit a curb, flipped onto its roof, and landed in a parking lot of a 7–Eleven store. *Id.* By coincidence, several police officers from the Prince George's County Police Department were sitting in a police car in the same parking lot when the accident occurred. *Id.* The state trooper arrived at the parking lot twenty to thirty seconds after the accident and observed a police officer standing with the appellant "twenty to thirty feet from the vehicle." *Id.* The appellant told the trooper that he was a passenger in the vehicle and that he knew that the vehicle was stolen. *Id.*

After an adjudicatory hearing, the circuit court found the appellant "involved in the delinquent act of theft of property (automobile) worth $500 or more," in violation of C.L. § 7–104(c). *Id.* at 479, 481, 6 A.3d 955. On appeal, the appellant admitted that he knew that the vehicle was stolen, but argued that his mere presence in the vehicle as a passenger was insufficient to establish that he was in possession of the stolen vehicle. *Id.* at 481, 6 A.3d 955.

We began our analysis with the observation that "possession is an element of the crime of theft." *Id.* at 483, 6 A.3d 955. We defined possession as follows:

> Possession may be actual or constructive, exclusive or joint. *Taylor* [*v. State*], 346 Md. [452,] 458, 697 A.2d 462 [1997]. While the theft statute does not define possession, the dangerous substances section does. Section 5–101(u), Crim. Law Art., defines "possess" as "to exercise actual or constructive dominion or control over a thing by one or more persons." "Control" of a dangerous substance has been defined as "the exercise of a restraining or directing influence over the thing allegedly possessed." *Taylor*, 346 Md. at 457, 697 A.2d 462 (quotation marks and citations omitted).

*Id.*

In a case involving a stolen vehicle in which the accused is a passenger, possession usually is joint with the driver, because "[t]he person who has a directing influence over a car, determining if and where the car goes and how fast, is generally the driver, as that person is in command of the steering wheel and acceleration." *Id.* at 490, 6 A.3d 955. Citing *Burns v. State,* 149 Md.App. 526, 817 A.2d 885 (2003), we stated that joint possession of stolen property must be " 'in such firm and continuing control of the property as to support an inference of mutual guilt.' " 195 Md.App. at 485, 6 A.3d 955 (quoting *Burns,* 149 Md.App. at 553, 817 A.2d 885).

Because Maryland had not addressed the issue of possession of a stolen vehicle by a passenger, we reviewed cases from other jurisdictions and found that those courts "have held that mere presence in a vehicle, even with knowledge that the vehicle is stolen, is not enough to establish possession of a stolen vehicle to support a theft conviction." *Id.* at 486, 817 A.2d 885. We learned from our review, however, that other courts "have held that *presence plus other incriminating evidence* may be sufficient to establish theft." *Id.* (emphasis added). Included in the "other incriminating evidence" identified by courts of our sister jurisdictions were (1) flight from the police by the driver and defendant passenger, *Common-*

*wealth v. Carson,* 405 Pa.Super. 492, 592 A.2d 1318, 1322–23, *appeal denied,* 529 Pa. 616, 600 A.2d 533 (1991); *Commonwealth v. Johnson,* 7 Mass.App.Ct. 191, 386 N.E.2d 798, 800 (1979); (2) use of the vehicle by the defendant and driver in the commission of a crime, *Johnson,* 386 N.E.2d at 800; (3) the defendant's use of a false name, *Johnson,* 386 N.E.2d at 800; and (4) a relationship between the driver and the defendant passenger, *Lynch v. State,* 829 So.2d 371 (Fla.Dist.Ct. App.2002), *review denied,* 845 So.2d 891 (Fla.2003). *In re Melvin M.,* 195 Md.App. at 486–87, 6 A.3d 955.

The State in *In re Melvin M.* focused on the "other incriminating evidence" of the appellant's flight from the police. *Id.* at 486, 490, 6 A.3d 955. This Court agreed with the general proposition that, "when a joint enterprise or acting in concert inference has been permitted in this context, it has been based on evidence that *the driver and passengers all reacted to being approached by the police by fleeing from the stolen vehicle."* *Id.* (emphasis added). The problem for the State, however, was that there was no evidence that the appellant had fled from the police. *Id.* We reversed the appellant's conviction, holding that the "mere presence in the vehicle, without more, is insufficient to show possession to sustain a conviction for theft of an automobile. Rather, the State must present some evidence that the accused took some action which demonstrated his restraining or directing influence over the car." *Id.*

■ In *In re Melvin M.,* the conceptual lynchpin underlying a finding of possession of a stolen vehicle by a passenger is the presence of "other incriminating evidence" that tends to show a joint enterprise or acting in concert by the driver and the defendant passenger. Examples of such "other incriminating evidence" include, but are not limited to, flight by the driver and the defendant passenger when approached by the police, the use of the vehicle in a crime or other joint activity, and a relationship between the driver and the defendant passenger. Although not required, all three examples are present in the case *sub judice.*

First, it is undisputed that, when the police officers followed the stolen vehicle into a cul-de-sac and activated the emergency lights on their marked police car, the stolen vehicle drove through the front yards of several residences and came to a stop. Appellant, Patrick (the driver), and the three other passengers got out of the vehicle and fled on foot "through the yard, over the fence, into the next street." Second, appellant and Patrick used the stolen vehicle in a joint activity, albeit not a crime. When appellant was picked up in the stolen vehicle, Patrick told him that they were going to a friend's house and would then come back to drop them off. The owner of the stolen vehicle testified that she saw her vehicle go into a residential subdivision and park; the occupants got out of the vehicle, went into a house, and later came out of the house, got into the vehicle, and left the subdivision. The trial court could reasonably infer that appellant was one of the occupants of the stolen vehicle observed by the owner. Finally, appellant knew Patrick, because Patrick's family and appellant's family had been friends for, in Patrick's words, "as long as we can remember."

Therefore, unlike *In re Melvin M.*, we conclude that there was sufficient evidence, other than appellant's mere presence in the stolen vehicle, for the trial court to find that appellant was in joint possession of the stolen vehicle with the driver.[9]

---

9. According to appellant, other jurisdictions have held that proof that the accused was a passenger in a stolen car and fled from the police is insufficient to support the inference that the passenger had possession of the car. Appellant cites *In re Anthony J.*, 117 Cal.App.4th 718, 11 Cal.Rptr.3d 865 (2004) for support. Appellant's contention is misplaced for two reasons. First, as set forth *supra*, the evidence supporting the finding of joint possession of the stolen vehicle is not limited to appellant's flight from the vehicle, along with the other occupants, to avoid arrest. We express no opinion on whether joint possession of a stolen vehicle by a passenger can be predicated on flight from arrest alone. Second, *In re Anthony J.* does not involve occupants of a stolen vehicle exiting from the vehicle when confronted by the police and fleeing to avoid arrest. The facts in *In re Anthony J.* showed that the appellant, a passenger, and three other occupants of a stolen vehicle exited the vehicle after the vehicle was parked in a parking lot. *Id.* at 868. The appellant and his companions were walking away from the vehicle when a police car drove through the parking lot. *Id.* Upon

Accordingly, the possession element of C.L. § 7–104(c) was satisfied.

### Knowledge that the Vehicle was Stolen

■ The facts of the instant case also diverge from those in *In re Melvin M.* on the element of guilty knowledge. In *In re Melvin M.*, the appellant admitted that he knew that the vehicle was stolen. 195 Md.App. at 481, 6 A.3d 955. Here, there was no evidence that appellant admitted that he knew that Pittman's vehicle was stolen. Appellant thus argues that there is insufficient evidence to support a finding that appellant knew that the vehicle had been stolen, or believed that it probably had been stolen. *See* C.L. § 7–104(c). We disagree and shall explain.

In *Burns*, 149 Md.App. 526, 817 A.2d 885, Judge Charles E. Moylan, Jr. speaking for this Court, set forth an extensive analysis of the scienter requirement for the crime of criminal possession of stolen property under C.L. § 7–104(c) (known as the common law crime of receiving stolen goods before the enactment of the Consolidated Theft Act, effective July 1, 1979). *Id.* at 549–53, 817 A.2d 885. In *Burns*, the appellant was one of three occupants of a two-door Chevrolet Cavalier that was stopped by police. *Id.* at 530, 817 A.2d 885. The appellant was the right, rear seat passenger, and the other two occupants were the driver and the front seat passenger. *Id.* at 530, 543, 817 A.2d 885. Found underneath the front passenger seat, immediately in front of where appellant was sitting, was a loaded and stolen .38 caliber handgun. *Id.* at 530, 540, 817 A.2d 885. The handgun had been stolen four months earlier. *Id.* at 549, 817 A.2d 885. Included among the appellant's convictions were the illegal possession of a regulated firearm by a convicted felon and criminal possession of

---

seeing the police car, all four started running. *Id.* The officers in the police car were not looking for the stolen vehicle and did not give chase. *Id.* The Court of Appeal summarized this evidence as simply, "four young men got out of a car, they ran as a patrol car drove nearby." *Id.* at 873.

stolen property, the latter under § 7–104(c). *Id.* at 545, 549, 817 A.2d 885.

After concluding that there was sufficient evidence to support the appellant's conviction for illegal possession of a regulated firearm, this Court addressed the sufficiency of the evidence for the appellant's conviction for criminal possession of stolen property under § 7–104(c), with a particular emphasis on the requirement of scienter. *Id.* at 548–51, 817 A.2d 885. This Court said:

For present purposes, it is undisputed that the handgun in question had been stolen. There is also little question that whoever possessed the gun, jointly or exclusively, on January 14, 2001, intended to continue possessing it. That is clearly enough of a *mens rea* to satisfy the watered-down *animus furandi* of theft. The critical element of the unlawful possession in this case was the necessary scienter, the requirement of "knowing that [the stolen item] has been stolen, or believing that it has probably been stolen." Section 7–102(b)(1), in pertinent part, defines "knowingly":

When knowledge of the existence of a particular fact is an element of a crime, that knowledge is established if a person is practically certain of its existence.

Section 7–102(b)(2) goes on:

Equivalent terms such as "knowing" or "with knowledge" have the same meaning.

**The mere possession of a stolen item, particularly four months after the theft, is not automatically sufficient, in and of itself, to prove a violation of § 7–104(c). Scienter is a required incremental element. In this case, the State did not offer a shred of evidence to show that the appellant knew or should have known that the gun was stolen.**

*Id.* at 550, 817 A.2d 885 (alteration in original) (emphasis added).

We indicated that the only evidence of knowledge was possession, but "we nowhere suggested that [the appellant's] possession was necessarily exclusive rather than joint." *Id.* at

551, 817 A.2d 885. The distinction between joint and exclusive possession is important with respect to crimes against property, because "as an evidentiary predicate for scienter, possession generally contemplates something more by way of continuing and exclusive exercise of dominion and control over property than is required to show that a defendant was merely a participant or joint possessor in some variety of prohibited, but possibly short-lived, behavior." *Id.*

We concluded:

As a matter of law, **it cannot be said that joint possession of a stolen item either is or is not an adequate predicate from which to infer that a particular joint possessor** was the thief of the item or **had knowledge of the theft.** There is no uniform answer. **The adequacy of the predicate,** as a pure matter of fact, **will depend upon the random and *ad hoc* circumstances of each particular instance of joint possession.**

*Id.* at 553, 817 A.2d 885 (emphasis added).

Because there were no *"ad hoc* circumstances" present in *Burns,* either in or beyond the appellant's joint possession of a handgun, we held that, as a matter of law, there was "not a sufficient factual predicate to give rise to a permissible inference that [the appellant] had the required scienter for a violation of § 7–104(c)." *Id.* at 554, 817 A.2d 885.

*Burns,* however, did not identify any of the *"ad hoc* circumstances of each particular instance of joint possession" that would support an inference of guilty knowledge under § 7–104(c). *Id.* at 553, 817 A.2d 885. For that information, we look to *Carson,* which as indicated above, was a case relied on by this Court in *In re Melvin M..* In *Carson,* the victim parked his car across the street from his home at 10:30 p.m. *Id.* at 1320. At 1:30 a.m., the sound of screeching tires woke the victim from sleep. *Id.* When he went to the window, the victim saw that his car was no longer parked on the street and immediately called the police. *Id.* Within minutes after the vehicle was reported as stolen, police officers, who were in an unmarked car, spotted the vehicle parked on the sidewalk a few streets away from the site of the theft. *Id.* When a

marked patrol car arrived on the scene, the appellant, Christopher Carson, and two other men exited the vehicle, looked in the direction of the officers, and fled. *Id.* Carson had gotten out of the car from the front passenger seat. *Id.* One of the officers, who never lost sight of Carson, chased and arrested him a short distance from the vehicle. *Id.* The steering column in the car had been broken, and the right vent window was smashed. *Id.*

At trial, Carson denied having any connection with the stolen vehicle and claimed that he was not in the vehicle on the night of his arrest. *Id.* Carson was convicted of unauthorized use of a motor vehicle and receiving stolen property. *Id.* The trial court, however, ruled that under the receiving stolen property charge, the Commonwealth had "failed to prove Carson's guilty knowledge and his possession of the car." *Id.* at 1321. Thus the court held that the evidence was insufficient to support that conviction. *Id.* at 1320.

On appeal, the Superior Court of Pennsylvania explained that, to convict Carson of receiving stolen property, "it was necessary for the Commonwealth to prove beyond a reasonable doubt that the vehicle was stolen, that Carson was in possession of it and that he had 'guilty knowledge;' that is, he knew or had reason to know that it was stolen." *Id.* at 1321. The court then identified several factors that it found to be relevant in determining whether an individual has guilty knowledge:

> While it is clear that mere possession without more is insufficient to show that the defendant knew or should have known that the property was stolen, other facts can make the inference of guilty knowledge reasonable, even compelling. **Such circumstances include but are not limited to the unexplained possession of recently stolen property, flight from the police or other evidence indicating an attempt to avoid capture and the condition of the property indicating a theft.**

*Id.* (emphasis added) (footnote omitted).

Upon its review of the evidence, the court determined that "all of the above additional circumstances were present" in

*Carson. Id.* The court observed that, "as soon as the patrol car and the unmarked police car approached the stolen vehicle, Carson and his companions exited the vehicle, looked at the officers and fled. *This evidence of flight corroborates the inference of guilty knowledge." Id.* at 1321–22 (emphasis added). With the addition of the broken vent window on the passenger side of the car and a broken steering column, the court concluded that "these circumstances taken together clearly support the inference that Carson had guilty knowledge that the car was stolen and satisfies the *mens rea* under the receiving stolen property charge." *Id.* at 1322.

In the case *sub judice,* we have held that there was sufficient evidence for the trial court to find that appellant was in possession of Pittman's Honda under § 7-104(c). That possession was joint with Patrick, the driver. According to *Burns,* joint possession of stolen property, without *"ad hoc* circumstances," is insufficient to support a finding of knowledge that appellant knew that the Honda had been stolen or believed that it had probably been stolen. 149 Md.App. at 553–54, 817 A.2d 885; *see* C.L. § 7-104(c). We hold, however, that there are sufficient *"ad hoc* circumstances" of appellant's joint possession to support a finding that appellant believed that Pittman's Honda probably had been stolen. We shall explain.

Appellant was in a vehicle that had been stolen nine days earlier. Appellant knew Patrick, the driver, because their respective families had been long-time friends. Appellant knew that Patrick did not own a car, much less a late-model car. When Patrick told appellant that he "got the car from this guy I knew around the neighborhood," appellant was suspicious enough to ask Patrick whether the car was stolen. Patrick responded that the car was not stolen, because he had the keys and they were just going over to a friend's house. Notwithstanding the lack of damage to the car, Patrick's explanation as to why he was driving a late-model car that he did not own was viewed by the trial judge, as the finder of fact, as a "major fairy tale." *See Kamara v. State,* 184 Md.App. 59, 79, 964 A.2d 244, *cert. denied,* 409 Md. 45, 972

A.2d 860 (2009) ("The credibility of the witnesses at trial is of course for the trier of fact[, and] the trier of fact is under no obligation to believe even uncontradicted explanations or denials of [a witness]'" (quoting *Dravo v. State,* 46 Md.App. 622, 628, 420 A.2d 1012 (1980))). Appellant apparently did not believe Patrick either, because, when confronted by a marked police car with emergency lights on, appellant, Patrick, and three other occupants of the Honda exited the vehicle at the same time and fled the police.[10] In our view, these facts constitute the *"ad hoc* circumstances" both within and beyond appellant's joint possession of the stolen vehicle that support a finding that appellant believed that the vehicle was probably stolen within the meaning of C.L. § 7–104(c).

We recognize that appellant's flight from the stolen vehicle when confronted by the police has been used by us to support the trial court's finding of both joint possession and guilty knowledge. Such use is acceptable because appellant's flight supports two separate factual inferences—a joint enterprise or acting in concert with the driver, *see In re Melvin M.,* 195 Md.App. at 490, 6 A.3d 955 (stating that "when a joint enterprise or acting in concert inference has been permitted in this context, it has been based on evidence that the driver and passengers all reacted to being approached by the police by fleeing from the stolen vehicle"), and guilty knowledge, *see Spears v. State,* 38 Md.App. 700, 707, 382 A.2d 616, *cert. denied,* 282 Md. 739 (1978) (stating that "[t]he record supports a rational inference that appellant's flight [from the police] was a result of his knowledge that the car was stolen and the serial number removed"); *see also Carson,* 592 A.2d at 1321, 1323; *Interest of Scott,* 388 Pa.Super. 550, 566 A.2d 266, 269 (1989), *appeal denied,* 527 Pa. 649, 593 A.2d 421 (1990) (stating that "where a passenger in a stolen vehicle flees for the purpose of avoiding arrest, a fact finder may infer therefrom the dominion and guilty knowledge necessary to convict").

---

10. In his brief, appellant claims that he "could have been running from police because he feared that there were illegal drugs or weapons in the car or just running for fear of the police in general." Yet, there is no evidence in the record to support such an argument.

In sum, we conclude that the facts in the record support the finding that Pittman's Honda was stolen, that appellant was in joint possession of the vehicle with the driver, that appellant believed that the vehicle probably had been stolen, and that appellant acted in a manner to deprive the owner of the property. Accordingly, we hold that there was sufficient evidence to support the trial court's finding that appellant was involved in the crime of criminal possession of stolen property, in violation of C.L. § 7-104(c).

## II.

### Unauthorized Use of a Motor Vehicle—C.L. § 7-203

■ Appellant argues that his "presence as a passenger in a stolen car and his flight upon police pursuit," standing alone, was insufficient evidence to support a finding that he was involved in the unauthorized use of Pittman's vehicle, in violation of C.L. § 7-203. According to appellant, "[c]entral to any passenger's conviction of unauthorized use of a motor vehicle[ ] is proof that th[e] passenger [ ] knew that the vehicle was being operated without the owner's consent." Appellant claims that, under the facts of the case *sub judice*, "there was no proof that [appellant] had any knowledge that the car was stolen." Moreover, according to appellant, "[appellant's] flight from the scene of the crash, while possibly evidence of consciousness of guilt, was not sufficient standing alone to prove that [appellant] knew the car was stolen."

The State counters that the evidence was sufficient to support the trial court's finding that appellant was involved in the unauthorized use of a vehicle in violation of C.L. § 7-203. The State claims that the "reach" of § 7-203 "extends to those individuals who were present as passengers in the stolen vehicle so long as the passenger possesses the requisite criminal intent, *i.e.*, knowledge that the vehicle was stolen." The State asserts that, in the present case, appellant's knowledge that the vehicle was stolen "can be inferred not only from his flight from law enforcement, but also the evidence concerning the circumstances as to how [appellant] came to be a passen-

ger in the vehicle." The State concludes that from the evidence "the factfinder could have inferred that [appellant] knew (or, at the very least, should have known) that [the] vehicle was stolen."

■■■ C.L. § 7–203(a) provides, in pertinent part, that, "[w]ithout the permission of the owner, a person may not take and carry away from the premises or out of the custody of another or use of the other, or the other's agent, or a governmental unit any property, including . . . a motor vehicle[.]" A conviction under § 7–203 does not require evidence that the accused was involved in the original taking of the vehicle out of the custody or use of its owner. *Anello v. State,* 201 Md. 164, 167–68, 93 A.2d 71 (1952) (stating that "participation in the continued use of the car after the original taking" is sufficient to render one guilty of the crime); *Johnson v. State,* 2 Md.App. 486, 490, 236 A.2d 41 (1967) (stating that "in order to convict for larceny of use it is not essential to prove that the accused took the property from the owner"). Nor does § 7–203 require evidence that a defendant, through his or her unauthorized use of the vehicle, intended to *permanently* deprive the owner of its use. *In re Lakeysha P.,* 106 Md.App. 401, 415, 665 A.2d 264 (1995), *cert. dismissed,* 343 Md. 627, 684 A.2d 5 (1996) (stating that the crime of unauthorized use does not have "any special *mens rea* with respect to the duration of the intended deprivation. The law, therefore, was deliberately silent on the subject").

In *In re Levon A.,* 361 Md. 626, 638, 762 A.2d 572 (2000), the Court of Appeals stated that "a person is guilty of unauthorized use of a motor vehicle if, knowing that the car has been stolen, the person participates in the continued use of it after the initial taking, as that continued participation manifests an intent to deprive the owner of possession of the vehicle." Appellant's sole claim of error for his violation of § 7–203 is that the evidence was insufficient to prove "that he knew the car was stolen." We disagree.

The Court of Appeals has defined the guilty knowledge necessary to convict a person of unauthorized use of property:

"While guilty knowledge is essential to a conviction of a person accused of larceny of use, such knowledge may be inferred from facts and circumstances such as would cause a reasonable man of ordinary intelligence, observation and caution to believe that the property had been unlawfully taken." *Anello*, 201 Md. at 168, 93 A.2d 71; *Johnson*, 2 Md.App. at 491, 236 A.2d 41 (same). Similarly, in *Curry v. State*, 235 Md. 378, 381, 201 A.2d 792 (1964), *cert. denied*, 379 U.S. 1004, 85 S.Ct. 729, 13 L.Ed.2d 705 (1965), the Court upheld the trial judge's finding that " 'these boys were using the car without the authorization of the owner and that *they were using the car under such circumstances that [they] either knew or should have known the car was stolen.*' " (alteration in original) (emphasis added).

In the case *sub judice*, there is no dispute that appellant participated, as a passenger, in the continued use of the stolen vehicle after its initial taking. In Part I, *supra*, we held that there was sufficient evidence for the trial court, as fact-finder, to find that appellant believed that Pittman's Honda probably had been stolen, within the meaning of § 7–104(c). We cited to evidence that appellant knew that Patrick, the driver, did not own a car, much less a late-model car, that Patrick's explanation of how he came to possess the vehicle prompted appellant to become suspicious and directly ask Patrick whether the car was stolen, that Patrick's explanation of how he came to possess the vehicle and why it was not stolen was found by the trial judge to be a "major fairy tale," and that when confronted by the police, in a marked patrol car with emergency lights on, appellant, Patrick, and three other occupants of the vehicle exited the vehicle at the same time and fled the police to avoid apprehension. We conclude that this same evidence is sufficient to support a finding that appellant knew, or should have known, that the vehicle was stolen. Accordingly, appellant had the requisite guilty knowledge to support his involvement in the crime of unauthorized use of a motor vehicle under C.L. § 7–203.

 

## III.

### Motor Vehicle Theft—C.L. § 7–105

 The trial court also found that appellant violated C.L. § 7–105. Section 7–105, entitled "Motor vehicle theft," provides, in relevant part: "(b) *Prohibited.*—A person may not knowingly and willfully take a motor vehicle out of the owner's lawful custody, control, or use without the owner's consent."

Appellant does not challenge the finding of involvement in the crime of motor vehicle theft under § 7–105. Indeed, appellant does not even mention § 7–105 in his brief. The State refers to § 7–105 in a footnote in its brief only as one of the nine charges brought against appellant. Nevertheless, at oral argument before this Court, appellant argued that there was insufficient evidence to support his violation of § 7–105, because there was no evidence to show that appellant had been involved in the initial taking of the vehicle. The State responded that the circumstances surrounding appellant's arrest were sufficient to show appellant's participation in the initial taking of the vehicle nine days earlier.

Ordinarily, when an appellant fails to raise a claim of error regarding a conviction or, if raised, fails to make an argument in support of such claim in his or her brief, we will not address it. *See* Md. Rule 8–504(a)(3), (6); *Fed. Land Bank of Baltimore, Inc. v. Esham,* 43 Md.App. 446, 457, 406 A.2d 928 (1979) (stating that "it is necessary for the appellant to present and argue all points of appeal in his initial brief); *Honeycutt v. Honeycutt,* 150 Md.App. 604, 618, 822 A.2d 551, *cert. denied,* 376 Md. 544, 831 A.2d 4 (2003) (stating that an appeals court need not address an argument where appellants fail to present it in their initial brief"). However, because the contentions of both parties at oral argument are based on a fundamental misconception of the history, purpose, and scope of § 7–105, we will consider the finding of appellant's involvement under that section.

The Maryland Consolidated Theft Act ("Theft Act") was enacted by the General Assembly in 1978, effective July 1, 1979. *See* 1978 Md. Laws, Chap. 849. Under the subheading

"Theft," the legislature added five sections, 340 through 344 of Article 27 (now C.L. §§ 7–101 to 104 and 107 to 110). Article 27, § 341 set forth the broad purpose of the Theft Act: "Conduct designated as theft in this subheading constitutes a single crime embracing, among others, the separate crimes heretofore known as larceny, larceny by trick, larceny after trust, embezzlement, false pretenses, shoplifting, and receiving stolen property." In other words, the pre-existing larceny-related theft offenses were not eliminated by the Theft Act, but were merely joined in a new and omnibus crime called theft. *See Burns,* 149 Md.App. at 549, 817 A.2d 885. Section 342 (now C.L. § 7–104) was the flagship section of the Theft Act, because it set out the conduct that constituted the crime of theft. Md.Code (1957, 1979 Cum.Supp.), Art. 27 § 342.

By contrast, the Theft Act did not affect the pre-existing statute governing unauthorized use, Article 27 § 349 (now C.L. § 7–203). The unauthorized use statute was enacted by Chapter 164 of the Acts of 1880. Its purpose was to provide a lesser-included offense to the horse stealing statute (Md.Code (1957), Art. 27 § 348) by eliminating the need to prove the element of *animus furandi,* or the specific intent to deprive. *See Pirner v. State,* 45 Md.App. 50, 58, 411 A.2d 135 (1980), *overruled on other grounds by In re Wallace W.,* 333 Md. 186, 634 A.2d 53 (1993). The unauthorized use statute, as originally written, covered only certain specified chattels, primarily livestock, and was later amended to include transportive conveyances, such as motor vehicles. *Compare* 1880 Md. Laws, Chap. 164, *with* 1918 Md. Laws, Chap. 422. Except for the addition of certain chattels, such as motor vehicles, the unauthorized use statute has remained essentially unchanged to today. *See Jones v. State,* 304 Md. 216, 221–22, 498 A.2d 622 (1985) (stating that "[e]ach of the chattels (except for motor vehicles and boats) delineated in § 349 today were also delineated in the original legislation over one hundred years ago").

C.L. § 7–105, entitled "Motor vehicle theft," was originally enacted by the General Assembly in 1995 as § 342A to Article 27. Article 27 § 342A(b) set forth the crime and § 342A(d) provided for the criminal penalty:

(b) *Prohibited Conduct.*—A person, or the person's aiders or abettors, "may not knowingly and willfully take a motor vehicle out of the lawful custody, control, or use of the owner without the owner's consent."

*　*　*

(d) *Criminal Penalty.*—A person who violates this section is guilty of the felony of taking a motor vehicle and on conviction is subject to a fine of not more than $5,000 or imprisonment for not more than 5 years or both.

In his book entitled "Maryland's Consolidated Theft Law and Unauthorized Use," Judge Charles E. Moylan, Jr., of this Court, discussed the history, purpose, and scope of Article 27, § 342A. Judge Charles E. Moylan, Jr., *Section 342A—Unauthorized Use of a Motor Vehicle, in* Maryland's Consolidated Theft Law and Unauthorized Use ch. 16 (MICPEL 2001). Judge Moylan summarized the scope of § 342A: "In its final form, the new law proscribes the unauthorized use of a motor vehicle. It is a special sentence-enhancing spin-off of the general unauthorized use law, which is codified as article 27, § 349 [now C.L. § 7–203]." *Id.* § 16.1. Judge Moylan went on to explain the purpose of § 342A, based on its legislative history:

> The clear purpose of § 342A was to cut the motor vehicle from the herd of 18 types of chattel covered by § 349 and then to provide both felony status and enhanced punishment for the unauthorized use of a motor vehicle. A survey of the voluminous correspondence that came into both the House and the Senate committees in support of the proposed law establishes this purpose beyond all doubt. Virtually every letter from county governments, local police departments, private citizens, and community organizations urged support of a bill that would "make unauthorized use of an automobile, as we know it, a felony in this State." Many urged support of the bill "which increases the penalty for the unauthorized use of [an] automobile."

The testimony before the House Judiciary Committee of Delegate James W. Campbell of Baltimore City and County

was representative, as it described the desirability of separating motor vehicles from livestock: "The current statutory prohibitions are merely addenda to livestock theft. This bill creates Section 342A, a separate section devoted exclusively to vehicle theft. Secondly, HB 497 would upgrade the penalty for 'unauthorized use' from a misdemeanor to a felony."

A letter from the Office of the Attorney General to Senator Walter M. Baker, Chairman of the Judicial Proceedings Committee, described that part of the original SB 738 that ultimately was enacted as "essentially the same as the current offense of unauthorized use, but is a felony punishable by a fine of up to $5,000 and imprisonment of up to five years."

*Id.* § 16.5. Judge Moylan concluded that "[t]he *actus reus* of § 342A is that of unauthorized use generally." *Id.*

The apparent confusion about the meaning of Article 27, § 342A stems from its location in the statute and its title. In his book, Judge Moylan stated that § 342A should have been codified next to the general unauthorized use law, Article 27 § 349, and not next to the "basic criminalizing provision" of the Theft Act, Article 27 § 342. *Id.* § 16.1. Judge Moylan explained that, when § 342A was first introduced in the legislature, it was part of a larger bill that had a provision, among others, for motor vehicle theft in the first degree, which simply added a penalty provision for a violation of the general theft provisions of § 342 when the stolen property happened to be a motor vehicle. *Id.* When such provision was deleted as unnecessary, the location in the statute of the provision for unauthorized use of a motor vehicle remained the same and was numbered as § 342A. *Id.* at § 16.2. In addition, § 342A was given the title of "Unlawful taking of motor vehicle." Md.Code (1957, 1995 Cum.Supp.), Art. 27 § 342A; 1995 Md. Laws, Chap. 268; *see also McGrath v. State,* 356 Md. 20, 26, 736 A.2d 1067 (1999) (quoting the title of § 342A).

In 2002, Article 27 § 342A was recodified without substantive change as C.L. § 7–105. *See* C.L. § 7–105 Revisor's Note. The location of § 7–105, however, remained next to the "basic criminalizing provision" of the theft statute, § 7–104. More importantly, the title to § 7–105 was changed to "Motor vehicle theft." The potential for misunderstanding thus persisted.

We are persuaded that Judge Moylan was correct in his conclusion that Article 27 § 342A, now C.L. § 7–105, proscribes the unauthorized use of a motor vehicle. That conclusion is confirmed by simply comparing the language of the prohibited conduct in §§ 7–105 and 7–203. With the exception of covering certain chattels in addition to a motor vehicle in § 7–203, the language of §§ 7–105(b) and 7–203(a) is virtually identical: [11]

§ 7–105(b) *Prohibited.*—A person may not knowingly and willfully take a motor vehicle out of the owner's lawful custody, control, or use without the owner's consent.

\* \* \*

§ 7–203(a) *Prohibited.*—Without the permission of the owner, a person may not take and carry away from the premises or out of the custody of another or use of the other, or the other's agent, or a governmental unit any property, including:

\* \* \*

(2) a motor vehicle;

\* \* \*

---

11. C.L. § 7–105(b) is more restrictive than C.L. § 7–203(a) regarding the victim of the crime. The victim under § 7–105(b) is limited to the "owner," which is defined in § 7–105(a) as "a person who has a lawful interest in or is in lawful possession of a motor vehicle by consent or chain of consent of the title owner." By contrast, the victim under § 7–203(a) includes any person, or the person's agent. Thus, the original thief of a motor vehicle may be the victim of unauthorized use by another under § 7–203(a), but not § 7–105(b). *See* Judge Charles E. Moylan, Jr., *Section 342A–Unauthorized Use of a Motor Vehicle, in* Maryland's Consolidated Theft Law and Unauthorized Use § 16.4 (MICPEL 2001).

 Therefore, we hold that C.L. §§ 7–105(b) and 7–203(a) proscribe the same conduct when the subject property is a motor vehicle.[12] Consequently, contrary to the assumption underlying both parties' contentions at oral argument regarding § 7–105, the State need not prove that appellant was involved in the original taking of the vehicle out of the custody or use of its owner. *See Anello,* 201 Md. at 167–68, 93 A.2d 71; *Johnson,* 2 Md.App. at 490, 236 A.2d 41. Because we have concluded that the evidence in the instant case is sufficient to support a finding of involvement in a crime of unauthorized use of a motor vehicle under C.L. § 7–203, that same evidence will support a finding of involvement under C.L. § 7–105.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

12. The difference in a conviction under C.L. §§ 7–105 and 7–203 is the criminal penalty. A conviction under § 7–105 is a felony punishable by up to five years' imprisonment and a $5,000 fine, while a conviction under § 7–203 is a misdemeanor punishable by between six months and four years' imprisonment and a fine between $50 and $100. Because appellant was prosecuted as a juvenile, these penalties are irrelevant.